# Curtis W. Drake

## v.

# A. W. Livesay, et al.

Record No. 830585

March 7, 1986

Present: All the Justices

Richard E. Railey, Jr. (Railey and Railey, on briefs), for appellant.

F. Bruce Stewart (Stewart and Stewart, on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

The sole question presented by this appeal is whether a letter constituted a sufficient written memorandum of an oral contract for the sale of land to satisfy the requirements of the statute of frauds.

Curtis W. Drake brought this action for damages against A. W. Livesay and Myrtle M. Livesay, his wife, alleging a breach of contract and a violation of the Virginia Consumer Protection Act. Drake's motion for judgment alleged that the Livesays had acquired a parcel of real property in Southampton County for $35,000 in April 1982; that A. W. Livesay, a licensed real estate broker, had promptly advertised the property for resale; that on May 17, 1982, Livesay, in his own behalf and as agent for his wife, entered into an oral contract to sell the property to Drake for $36,500 cash, promising to reduce the oral contract to writing on the following day; but that Livesay instead, on May 20, contracted to sell the property to parties named Turner for a price of $38,500 and, in fact, conveyed it to the Turners a few days later.

Conceding that Livesay had never reduced the oral contract of May 17 to writing, Drake nevertheless asserted that Livesay had, by writing a letter apologizing for having sold the property to Turner for a higher price, made a sufficient written memorandum of

the oral agreement to satisfy the statute of frauds. Livesay's letter, attached to the motion for judgment, is as follows:

FROM THE DESK OF
A.W. LIVESAY

May 20, 1982

Curtis Drake
Continental Telephone Co.
Ivor, Virginia 23866

Dear Curtis:

We, Holt and I[*] did today sell to the Turners of Portsmouth the Emmett and Ethel Dunlow's property. They had proposed to pay us $38,500.00 for this same property that I had told you we would sell to you but, as I told you on the phone I, after discussing this with Holt had no other alternative but, to sell to the same people that had approached you about buying and after finding that you did not own came to proposition me.
Curtis, They will rent to your father as Emmitt did as they don't want to run the store only want to live there after selling their Portsmouth property. For your sake I am sorry but, for my sake as much time and effort as I had put into working with Emmitt in the sale of the Franklin property and buying his property I think I am entitled to this increase in price.

Sincerely,
A.W. Livesay

The Livesays demurred on the sole ground that the foregoing letter was not a sufficient memorandum to satisfy the statute of frauds, and, therefore, that the prosecution of Drake's action was barred on both asserted theories. The court sustained the demurrer and dismissed Drake's action. We granted an appeal.

■ The statute of frauds, Code § 11-2, provides in pertinent part that no action shall be brought on a contract for the sale of real estate unless the contract "or some memorandum or note

---

[*] The Livesays stated on brief that Holt, who had no interest in the property, was their son. A.W. and Myrtle M. Livesay held title to the property as tenants by entireties.

thereof, be in writing and signed by the party to be charged thereby, or his agent; but the consideration need not be set forth or expressed in writing, and it may be proved (where a consideration is necessary) by other evidence."

■ In *Murphy* v. *Nolte & Co.*, 226 Va. 76, 307 S.E.2d 242, (1983), we said: "The statute of frauds, procedural and remedial in nature, is concerned with the enforceability of a contract and not its validity . . . . The statute will not be applied when the result is to cause a fraud or perpetrate a wrong, because the object of the statute is to prevent frauds." *Id.* at 81, 307 S.E.2d at 245 (citations omitted). Thus, the statute does not require that contracts within its purview be written. It merely interposes a bar to the enforcement of certain oral contracts, which bar may be removed by proof of a sufficient written memorandum of the transaction. When the bar is removed, it is the oral contract which is subject to enforcement, not the memorandum. Because the memorandum serves only to remove a bar to the enforcement of the oral contract, the validity of the oral contract may be established by other evidence. *Browder* v. *Mitchell*, 187 Va. 781, 785, 48 S.E.2d 221, 223-24 (1948); *see also Troyer* v. *Troyer*, 231 Va. 90, 94, 341 S.E.2d 182, 185 (this day decided); *Reynolds v. Dixon*, 187 Va. 101, 46 S.E.2d 6 (1948); *Johnson* v. *Ronald's Adm'r.*, 18 Va. (4 Munf.) 77 (1813).

The Livesays contend that the May 20 letter is an insufficient memorandum for three reasons: (1) because it fails to express the essential terms of the contract; (2) because it was not signed by Mrs. Livesay, who owned the property with her husband as tenants by entireties; and (3) because it was a memorandum only of an offer to sell, not of a bilateral contract.

■ We agree with Drake's contention that the letter expresses the essential terms of the alleged contract to the extent necessary to take the case out of the statute of frauds. The contracting parties, Drake and A. W. Livesay, are identified. The property is identified as "Emmett and Ethel Dunlow's property" and "this same property that I had told you we would sell to you." The statute expressly dispenses with any requirement that the memorandum state the consideration agreed upon. The terms of payment are not stated expressly, but this is unnecessary. In the absence of agreement regarding deferred purchase money, it is presumed that a contract of sale contemplates payment in cash. *Rose* v. *Spa Realty Assoc.*, 42 N.Y.2d 338, 346, 397 N.Y.S.2d

922, 928, 366 N.E.2d 1279, 1285 (1977); *cf. Vick* v. *Howard*, 136 Va. 101, 116 S.E. 465 (1923) (if not waived, vendor is entitled to full payment in legal tender). Thus, the contents of Livesay's letter fulfill the requirements of the statute of frauds. *See Reynolds* v. *Dixon*, 187 Va. at 108, 46 S.E.2d at 9.

Drake concedes that Mrs. Livesay's failure to sign the memorandum would be fatal to a claim for specific performance because an estate by entireties cannot be severed by the sole act of either spouse. *Vasilion* v. *Vasilion*, 192 Va. 735, 740, 66 S.E.2d 599, 602 (1951). Drake argues, however, that Mr. Livesay was capable of contracting to convey property which he did not own at the time of contracting and would be answerable to Drake in damages for his subsequent inability to perform. We agree. *Ingram* v. *Lunsford*, 216 Va. 785, 786, 224 S.E.2d 129, 130 (1976); *Jennings* v. *Realty Developers, Inc.*, 210 Va. 476, 479-80, 171 S.E.2d 829, 832 (1970). Hence, the letter was a memorandum of an oral contract between Drake and Mr. Livesay sufficient to support a breach-of-contract action between them.

The question of Mrs. Livesay's liability depends upon proof of agency. The statute of frauds requires a written memorandum signed by "the party to be charged thereby, or his agent." The question whether agency exists cannot ordinarily be proved solely by the utterances of the purported agent. *Bardach & Co.* v. *Charleston Port Terminals*, 143 Va. 656, 668, 129 S.E. 687, 691 (1925). Unless the existence of an agency relationship depends upon unambiguous written documents, or undisputed facts, the question of agency *vel non* is one of fact for the jury. *See Turner* v. *Buick Corp.*, 201 Va. 693, 698, 112 S.E.2d 911, 915 (1960); *Bloxom* v. *Rose*, 151 Va. 590, 595-96, 144 S.E. 642, 643 (1928). Agency may be inferred from the conduct of the parties and from the surrounding facts and circumstances. *Royal Indemnity Co.* v. *Hook*, 155 Va. 956, 157 S.E. 414 (1931). Thus, the question whether Mr. Livesay acted as agent for his wife in writing the May 20 letter cannot be resolved upon demurrer. Drake has properly alleged agency and is entitled to prove it if he can.

The Livesays rely upon *Browder* v. *Mitchell*, 187 Va. 781, 48 S.E.2d 221 (1948), in support of their final contention that the May 20 letter is a memorandum of an unaccepted offer rather than of a bilateral contract. In *Browder*, a tract of land was owned by children, who were *sui juris*, and by their mother, who was not. The children received an offer from prospective purchas-

ers which they desired to accept, but could not do so because of their mother's interest. Accordingly, they filed a chancery suit for partition, asking the court to accept the offer, sell the land to the prospective purchaser at a judicial sale, and divide the proceeds. The court, instead, ordered an auction and sold the property to a higher bidder. The original offerors attacked the sale on the ground that they had orally contracted with the children for the purchase of the property and that the children's bill of complaint for partition was a sufficient memorandum of the oral contract to take the case out of the statute of frauds. The trial court sustained the children's plea of the statute of frauds and we affirmed.

This case differs materially from *Browder*. There, the purported sellers were unable to sell, and the purported purchasers were unable to buy, the property by an enforceable private contract. The bill of complaint, relied on as a memorandum of the purported contract, made no reference to a contract at all, but referred to the offer merely as an offer which the children asked the court to accept. There was no language in the pleading from which the existence of a contract could be inferred. Here, by contrast, the existence of a bilateral oral contract between Drake and A. W. Livesay may fairly be inferred from the May 20 letter. In it, Livesay tells Drake: "I did today sell to the Turners . . . this same property that I had told you we would sell to you. . ." Livesay's reference to a consummated sale to the Turners gives rise to a fair inference that he used the term "sell" to describe a completed contract. The language of the letter furnishes no support for Livesay's contention that he employed the word "sell" merely to describe an unaccepted offer.

We conclude that the letter reflects Livesay's misconception that a contract for the sale of real estate is invalid unless fully reduced to writing and that Livesay might therefore sell to a higher bidder with impunity as long as his contract with Drake was merely oral. That view misconceives both the nature and the purpose of the statute of frauds.

Because it was error to sustain the demurrer, we will reverse the judgment and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*