## CIRCUIT COURT OF CAROLINE COUNTY

Reuben Rollins
and Cecelia Garnett

v.

R. A. Hicks

### July 24, 1987

By JUDGE WILLIAM H. LEDBETTER, JR.

This cause is before the court on the plaintiff's exceptions to the report of the commissioner in chancery. The exceptions were argued by counsel on July 15, 1987.

The plaintiffs ("Rollins" and "Garnett," respectively) instituted this suit in equity against the defendant ("Hicks") to compel specific performance of a contract for the sale of real estate.

Rollins and Garnett allege that in April of 1963 Hicks agreed to sell them a ten-acre parcel of land, with dwelling house, located in Caroline County, for the purchase price of $7,000.00, payments to be $75.00 down and $50.50 per month. They further claim that they accepted the offer, took possession, and made the payments. In support of their allegations, they offered in evidence a memorandum relating to the transaction, dated April 7, 1963, signed by Hicks.

The bill is not a model of clarity. Nevertheless, it appears from a fair reading of the pleading that Rollins and Garnett are relying upon a parol agreement evidenced

by the memorandum, or, in the alternative, upon the memorandum itself as a sufficient writing to constitute a contract between the parties.

Hicks denies the existence of an agreement. He admits that in April of 1963 he did offer to sell the subject property to Rollins (not Garnett), but the offer was not accepted. Several weeks later, he presented a formal contract to Rollins, but Rollins never signed it. Hicks says that Rollins has been renting the property ever since.

In his answer, Hicks also claims that Rollins breached the agreement by failing to make some of the monthly payments in a timely manner, and by failing to pay the real estate taxes and insurance. However, he never gave notice of default to Rollins, or took any action to remove him or to otherwise rescind or terminate their relationship.

The allegations regarding an alleged breach are, of course, inconsistent with Hicks's claim that no agreement existed in the first place. Nevertheless, these inconsistent assertions will be treated as pleading in the alternative and both positions advanced by the defendant will be considered.

### Status of the Case

Rollins and Garnett filed their bill on April 19, 1976. Hicks was personally served the following day and filed a responsive pleading on May 6, 1976.

Nothing further transpired until the cause was referred to a commissioner in chancery by decree entered on September 26, 1977.

Approximately thirteen months later, the commissioner gave notice of a hearing and took evidence on October 27, 1978. No report was filed, and the commissioner was elected to a district court judgeship.

The case then lay dormant until August 11, 1980, when the court, on motion of the plaintiffs, appointed a new commissioner. The new commissioner took no additional evidence, and apparently the parties did not request to be heard further.

On February 12, 1987, the new commissioner filed a report based on the evidence presented to the first commissioner. The report recommended that the relief sought in the bill be denied.

On February 23, 1987, Rollins and Garnett filed exceptions to the report and requested a hearing on the exceptions. On July 15, 1987, they filed a "motion to set aside" the report.

The court heard arguments of counsel for both parties on July 15, 1987.

### The Evidence

The only evidence presented in this suit is the testimony before the first commissioner on October 27, 1978, and several exhibits admitted at that hearing. Only the parties themselves testified. The entire transcript consists of 11 pages. Despite the lapse of almost nine years since the taking of evidence in this suit, the parties have not asked for the opportunity to present further evidence.

### Existence of an Agreement

The first issue is whether an agreement exists between these parties for the sale and purchase of the subject real estate.

It is axiomatic that in order for there to be a valid and binding agreement, there must be an offer and an acceptance, a meeting of the minds regarding all material terms, and legal consideration.

In *Van Dyke v. Norfolk & Southern R. Co.*, 112 Va. 835 (1911), the court pointed out that a contract that is incomplete, uncertain, or indefinite in its material terms will not be specifically enforced in equity. The element of completeness denotes that the contract embraces all the material terms; that of certainty denotes that each one of these terms is expressed in a sufficiently exact and definite manner.

From a reading of the transcript of testimony given before the commissioner, a review of the exhibits, and a consideration of the applicable legal principles, the court is convinced that Rollins and Hicks reached an agreement in April of 1963 whereby Hicks sold and Rollins purchased the subject property for the purchase price of $7,000.00, payable at $50.50 per month. All material terms of the bargain were understood and agreed upon. In reliance

thereon, Rollins paid $75.00 down, took possession, and made monthly payments. Hicks claims that he merely offered the property for sale to Rollins, upon the terms aforesaid, and that the offer was never accepted. However, the conduct of the parties contradicts that assertion. As noted above, Rollins made a down payment and took possession of the property. He made monthly payments which were receipted by Hicks. The notations on many of the receipts ("Pay on Place," "Payment on House and Land," "Payment on Land," etc.) clearly indicate the existence of a consummated agreement for the sale and purchase of the property.

In a further effort to refute the plaintiff's claim, Hicks points out that he had a formal contract prepared and presented to Rollins, which neither party ever signed. This is evidence that no agreement was ever reached, he argues. But the draft contract, prepared and presented some time after April of 1963 (it is dated June 1, 1963) varied the terms of the parties' original understanding. In essence, it provided for a five-year lease with option to purchase. It provided for 6% interest on the unpaid balance of the purchase price. It required Rollins to pay taxes and insurance. It called for the monthly payments to be made at a Bowling Green bank. Even Hicks's testimony shows that these details, added by an attorney, were not terms of his original offer to Rollins.

The subsequent preparation and presentation of this formal document, which varied the terms of the original discussions between the parties, does not refute Rollins's assertion that a parol agreement already existed. In a sense, it substantiates Rollins's assertion. It was prepared, obviously, at the instance of Hicks to formalize the understanding of the parties, with a few details added, all of which were beneficial to Hicks.

Thereafter, Hicks continues, he considered Rollins to be nothing more than a tenant and the monthly payments to be nothing more than rent. Nobody advised Rollins of his new status, and, in fact, several of the receipts given by Hicks to Rollins *after* Rollins failed to sign the formal document bore the notations referred to above. Many months later, Hicks began writing "Rent" on the monthly receipts. Rollins is illiterate.

In any event, these unilateral attempts to alter the terms of the agreement and Rollins's status as purchas-

er-versus-tenant had no effect upon the original transaction and do not constitute probative evidence upon the issue whether in fact a parol agreement was reached in April of 1963.

The court finds that a parol agreement exists as of April, 1963, consisting of the terms recited above.

### Enforceability of the Agreement

The next issue is whether enforcement of the agreement is barred by the statute of frauds.

Virginia Code § 11-2(6) provides that no action can be brought upon any contract for the sale of real estate unless the promise, contract, agreement or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged or his agent.

On account of the statute, modeled after the English statute adopted by parliament in 1677, a parol contract for the sale of real estate, no matter how well-defined, cannot, without more, be enforced.

Therefore, the parol agreement that Rollins and Hicks reached in April of 1963 concerning the subject property cannot be enforced unless that agreement was evidenced by some writing signed by Hicks.

Rollins produced such a writing. The paper, dated April 7, 1963, and bearing Hicks's signature, contains the following handwritten message: "Received of Reuben Rollins $75.00 Pay on Tom Reeve House with 150 ft frontage." A rectangular drawing of the property appears with a notation above it indicating "150 ft" and inside the rectangle is written $7,000.00. A smaller square within the rectangle is designated "House."

The paper also contains other writing, including "20 years exact"; "10 acres"; "Payment a month $50.50"; "Left side Lester Jackson Line." The earlier writing, "150 ft," is stricken through and "210 ft" is penned beside it. Hicks contends that these other writings were not on the original memorandum, which he admittedly signed, but were added later. He does not say how much later, and he does not say who added them. Interestingly, the alteration of "150 ft" to "210 ft" describing the lot frontage is the same frontage figure inserted in the

unsigned contract which Hicks caused to be prepared. As noted above, Rollins can neither read nor write.

It is obvious that this writing is not the agreement itself. Although Rollins' attorney asserted at one point during the commissioner's hearing, "I say this, the contract [referring to the paper described above] specifically is a written contract," that does not appear to be the plaintiffs' theory of the case. The bill refers to "a writing and an oral agreement," and counsel pursued that argument before the court. Counsel misspoke at the deposition. The writing described above is *not* the contract, but a memorandum which evidences the underlying parol contract.

The Statute of Frauds does not require that the contract itself be in writing. No formal instrument is required. Rather, the statute interposes a procedural and remedial bar to the enforcement of oral contracts for the sale of real estate, which bar may be removed by proof of a sufficient written memorandum of the transaction. When the bar is removed, it is the oral contract which is subject to enforcement, not the memorandum. Because the memorandum serves only to remove a bar to the enforcement of the oral contract, the validity of the oral contract may be established by other evidence. *Drake v. Lindsay*, 231 Va. 117 (1986).

In *Drake, supra,* the seller wrote a two-paragraph letter to the purchaser apologizing for his decision to sell the property to someone else for a higher price. The Court held that the letter was a sufficient memorandum to satisfy the statute of frauds: i.e., the contracting parties were identified, the property was identified, and the essential terms were otherwise expressed. (The memorandum need not state the consideration agreed upon.)

In *Reynolds v. Dixon*, 187 Va. 101 (1948), the court similarly held that a letter was sufficient. There, the Court said that it is the general rule that a memorandum wholly untechnical in form may be sufficient. It may consist of any kind of writing "from a solemn deed to mere hasty notes or memoranda in books or papers." In *Troyer v. Troyer*, 231 Va. 90 (1986), a deposition in a divorce suit, given by the seller, containing the essential terms of the agreement, was deemed a writing sufficient to satisfy the statute. The Court said that the writing meets the require-

ments of the statute if it contains the names of the parties, the terms and conditions of the contract, and a description of the property sufficient to render it capable of identification.

In this case, the memorandum of April 7, 1963, meets the requirements. It contains the names of Rollins and Hicks, the contracting parties. It describes the property sufficient to render it capable of identification ("Tom Reeve House"), and, in fact, no one has questioned the parties' awareness of the exact location and boundaries of the property. It expresses the purchase price (although unnecessary) and the other terms and conditions of the parties' undertaking.

In addition, the plaintiffs introduced other writings. Numerous receipts for monthly payments were admitted, as discussed above. Plaintiffs' Exhibit # 5 is a letter from Hicks to Rollins dated July 3, 1967, admonishing the latter about the arrearage in monthly payments and his failure to pay the taxes and insurance. These writings, too, are evidence from which reasonable inferences can be drawn to support the allegations in the bill.

Accordingly, the court is of the opinion that the note dated April 7, 1963, and other writings constitute a sufficient written memorandum of the oral contract to satisfy the requirements of the statute of frauds.

### Performance

Where one party to an oral contract has completely executed its terms, the other party is precluded from relying on the statute of frauds to avoid his obligations thereunder. On the other hand, there is authority for the proposition that payment of the purchase price under a land sale contract is not sufficient part performance of an oral contract to take the case out of the operation of the statute. See 8B M.J., *Frauds, Statute of*, § 27, 34-36. While the court does not base its opinion on this confusing doctrine of part performance, it is worth noting that the plaintiffs have been in possession of the property for almost a quarter century, and at the time of the commissioner's hearing almost nine years ago, displayed receipts in excess of the purchase price. It is settled that these factors can be taken into consideration in

determining whether, in fact, an agreement was reached between the parties.

### The Claim of Garnett

The parol agreement which is the basis of this litigation is between Rollins and Hicks. There is not a scintilla of evidence to support Garnett's claim that she is a party to the contract or has any interest in it. Her only direct participation in the transaction is her assertion that she was present when Rollins and Hicks reached agreement concerning the sale in April of 1963.

Therefore, the claim of Garnett is not supported by the evidence and must be denied.

### Weight Given Commissioner's Report

The report of a commissioner does not have the weight given to a jury verdict, but it is entitled to respect and should not be disturbed unless its conclusions are not supported by the evidence or are based on incorrect principles of law. Virginia Code § 8.01-610; *Parksley National Bank v. Parks*, 172 Va. 169 (1939); *Shepheard v. Boggs*, 198 Va. 299 (1956). However, where the evidence has not been taken in the commissioner's presence, the court's power and duty of review over the findings is somewhat different.

In this case, the commissioner who filed the report did not conduct the hearing. Thus, she did not observe the witnesses or hear first-hand any of the testimony. In her review of the testimony taken before another commissioner, and the legal principles applicable to the evidence, the court concludes that she reached incorrect conclusions. In such a situation, it is the responsibility of the chancellor to review and weigh the evidence according to proper principles of law and to arrive at his own conclusions.

Accordingly, the court is of the opinion that the report must be rejected as unsupported by competent and preponderating proof.

### Breach

Hicks's alternative position that Rollins defaulted on the contract is without merit. Payment of insurance and taxes were not terms of the original agreement. Failure by Rollins to make timely payments on occasion would have constituted a default *if* Hicks had not waived the delinquencies by acquiescence over many years. He admonished Rollins from time to time, but accepted "catch-up" payments, permitted him to remain in possession, accepted subsequent payments without hesitation, and took no action to rescind or terminate the transaction.

For these reasons, Hicks will not be heard to complain almost a quarter century later that Rollins breached the agreement by failing to make every monthly payment in a timely manner.

### Conclusions

The object of the statute of frauds is to prevent fraud. The statute will not be applied when the result is to cause fraud or perpetuate a wrong. *Murphy v. Nolte & Co.*, 226 Va. 76 (1983), cited in *Drake, supra.*

Here, the evidence heavily preponderates in favor of the existence of a parol contract between Rollins and Hicks, evidenced by a memorandum sufficient to satisfy the requirements of the statute of frauds.

Therefore, for the foregoing reasons, the agreement will be specifically enforced. Having paid the purchase price in full, Rollins is entitled to a proper deed with general warranty. 17 M.J., *Specific Performance* § 102.