In re **BROOKFIELD CENTRE LIMITED PARTNERSHIP, a Virginia limited partnership, Debtor.**

**BROOKFIELD CENTRE LIMITED PARTNERSHIP, a Virginia limited partnership, Plaintiff,**

v.

**CFS MANAGEMENT COMPANY, a Virginia corporation, Defendant.**

Bankruptcy No. 91–31269–S.

Adv. No. 91–3106–S.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Dec. 13, 1991.

Michael P. Falzone, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for plaintiff.

E. Duncan Getchell, Jr. and David A. Woodmansee, McGuire, Woods, Battle & Boothe, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes on before this Court upon the October 7, 1991 filing by the defendant, CFS Management Company ("CFS"), of a motion for summary judgment, pursuant to Bankruptcy Rule of Civil Procedure 7056 and Federal Rule of Civil Procedure 56, on all counts set forth in the complaint filed by Brookfield Centre Limited Partnership ("Brookfield"). Said complaint was filed by Brookfield on August 26, 1991 and contains Counts I, II, and III regarding specific performance, breach of an expressed contract, and breach of an implied contract, respectively.

After consideration of the evidence, exhibits and arguments of counsel at the November 19, 1991 hearing on CFS's motion for summary judgment and the evidence presented to the Court at the July 23, 1991 hearing on CFS's motion for relief from the automatic stay and Brookfield's motion for a preliminary injunction heard September 5, 1991, the Court makes the following findings of facts and conclusions of law.

## STATEMENT OF FACTS

CFS is the holder of an assigned interest in a nonrecourse promissory note owing by Brookfield in the original principal amount of $5,700,000 which is secured by a first deed of trust on certain improved real property located in Henrico County, Virginia.

Brookfield entered into three separate and distinct commercial leases of the property with the State Lottery Department of the Commonwealth of Virginia, Gumenick Properties, and World Access, Inc. Said leases require Brookfield to make certain rent concessions and also require Brookfield to make certain tenant improvements on the property. In addition, the deed of trust securing the note held by CFS requires Brookfield to comply with all lease terms pertaining to the property. The leases between the tenants and Brookfield were subject to and subordinate to the deed of trust, however, the deed of trust has been subordinated to the lease of Gumenick Properties.

In April 1990, CFS notified Brookfield that it was in default under the provisions of the promissory note and the deed of trust. Brookfield has made no payments under the note since December 1989.

Subsequent to the notification of default, Brookfield and CFS commenced negotiations in an effort to reach an amicable settlement. The parties discussed a number of options, including a transfer by deed in lieu of foreclosure by CFS.

As a result of the negotiations, Brookfield submitted a letter to CFS dated June 4, 1990, in which it presented its position regarding a settlement proposal. After receipt of the letter and further review, CFS returned the letter, upon which it had made numerous delineations and modifications, to Brookfield. Brookfield alleges that the letter of June 4 encompasses the necessary essential elements to demonstrate the existence of a contractual obligation between CFS and Brookfield for a transfer of the deed in lieu of foreclosure. CFS claims that the letter of June 4 was merely a continuation of negotiations and that it did not intend any agreement to be finalized until it was formally documented and approved by counsel.

Subsequent to Brookfield's default on the promissory note and prior to the order being entered by this Court on July 31, 1991 granting CFS relief from the automat-

ic stay, Brookfield expended approximately $630,000.00 for renovations and improvements to the property.

Herbert King ("King") and Brookfield began negotiations for the sale of the property in August 1990. The King negotiations concluded in a purchase and sale agreement dated December 19, 1990. Said purchase and sale agreement was contingent upon King obtaining sufficient financial backing to conclude the sale. Having failed to secure such financing, King informed Brookfield in January of 1991 that it would not be closing the King deal on the property.

Prior to the scheduled foreclosure sale of the property Brookfield filed for relief under Chapter 11 on March 26, 1991. On July 31, 1991, this Court heard CFS's motion for relief from the automatic stay and subsequent thereto, by order, granted the relief from stay to permit CFS to pursue its rights under applicable state law. On September 5, 1991, the parties were again before this Court on Brookfield's motion for a preliminary injunction to enjoin the foreclosure sale of the property which was scheduled for September 6, 1991. At that time as well as the hearing on July 31, 1991, the Court permitted the entry of a considerable amount of parol evidence arguably in violation of the parol evidence rule in an effort to better understand the full context of the negotiations and any agreements that might have been reached between the parties. Brookfield's motion for a preliminary injunction was denied. Brookfield subsequently asked for a stay pending appeal which was also denied. CFS has since purchased the property through a foreclosure sale.

## CONCLUSIONS OF LAW

F.R.C.P. 56 provides that summary judgment is appropriately granted if "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law".

To determine the materiality of the facts before the Court, the Court must look to the substantive state law on contracts to determine whether there exists between the parties a contract under which CFS may be held liable pursuant to Counts I, II or III of the Complaint. "It is the substantive law's identification of which facts are critical and which facts are irrelevant that governs". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As to whether a genuine issue of a material fact exists, the preliminary question before the Court is "not whether there is literally no evidence but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed". Id.[1] "If the evidence is merely colorable or is not significantly probative" summary judgment may then be granted. Id.

In review of the facts presented to the Court to determine whether a triable issue exists, the Court must review such facts in the light most favorable to Brookfield and any and all inferences to be made from such facts must also be considered to favor Brookfield. *Matsushita Electric Industry Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, summary judgment should not be regarded as a "disfavored procedural short cut but rather as an integral part of the Federal Rules as a whole which are designed 'to secure the just, speedy and inexpensive determination of every action'". *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

As summary judgment is usually before the Court at a proceeding which is something less than a full evidentiary hearing, the Court does not normally weigh the

---

1. The Court was comparing its current decisions with the scintilla of evidence standard which it had applied in earlier cases. The discussion noted the similarity between the genuine issue summary judgment standard and the reasonable jury standard used for directed verdicts and further noted the primary difference between summary judgment and directed verdict is procedural.

validity of the evidence presented. The Court in this instance, however, has had the opportunity to observe witnesses and listen to counsel's extensive arguments regarding the facts on two prior occasions. Consequently, the Court is not operating in a vacuum and will conduct its inquiry accordingly.

## COUNT I

Count I of the complaint seeks specific performance of the alleged contract whereby Brookfield would tender a deed in lieu of CFS's foreclosure of the property. The nature of the alleged contract brings the transactions within the Statute of Frauds.

■■■ No action shall be brought upon any contract for the sale of real estate "unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged." Va.Code Ann. § 11–2 (1950). A sufficient written memorandum of the transaction acts to remove the bar placed on certain oral contracts. "When the bar is removed it is the oral contract which is subject to enforcement not the memorandum. Because the memorandum serves only to remove a bar to the enforcement of the oral contract, the validity of the oral contract may be established by other evidence." *Drake v. Livesey,* 231 Va. 117, 341 S.E.2d 186 (1986).

■■ Brookfield alleges that the letter of June 4, 1990, written by Michael Denning constitutes a memorandum sufficient to conclude the existence of a contract between the parties. Only after the establishment of an adequate writing is the Court then to proceed to the question of the validity of the oral contract.

The Court heard considerable evidence on whether the June 4 letter satisfied the Statute of Frauds at the September 5, 1991 hearing on Brookfield's motion for a preliminary injunction. The Court concluded at that time, and here restates, that the letter and attachments of June 4 are insufficient to demonstrate the existence of a contract between the parties and that the

testimony of the parties given at that time, even if that testimony violated the parol evidence rule, still does not lead this Court to the conclusion that a binding contract existed between the parties (Trans. at 196–197). Thus, the June 4 letter does not constitute a writing adequate to remove the bar to enforcement of the alleged oral contract, presented by the Statute of Frauds.

Brookfield correctly contends that the Statute of Frauds should not be applied in situations whereby a fraud would be perpetrated upon the parties seeking relief, and therefore, claims that the alleged parol contract between the parties should be specifically performed, notwithstanding the absence of a memorandum sufficient to remove the agreement from the Statute of Frauds. Such an expressed parol agreement would be specifically enforceable only if the fraud would not be compensable by an award of monetary damages and the party seeking specific performance had previously performed all of its obligations under the parol contract.

The Court previously ruled that the June 4 letter had left matters between the parties undecided. There were several material alterations made to the letter and attachments thereto, including one which made the document subject to a definitive agreement and another which required attorney approval of any agreement.

■■ It is a matter of law that even though parties fully agree on the terms of their contract, where they do not intend to be bound by the terms until they can fully be set forth in a formal written contract, there is no contract. *Boisseau v. Fuller,* 96 Va. 45, 30 S.E. 457 (1898). The court further stated that terms such as "subject to a formal contract" and "notes and papers to be drawn up as soon as to be convenient" clearly indicate the intention of the parties not to be bound by the terms of the agreement until they can be formalized in a written contract. Therefore, "there is no contract until the formal writing contemplated by the language used has been prepared, approved, and executed in ac-

cordance with the intentions of the parties". Id.

█ The Court, having noted the material alterations to the June 4 letter, found at the September 5, 1991 hearing that CFS did not intend the June 4 letter to be a contract and that the letter was merely a correspondence in the ongoing negotiations between the parties. This finding is further supported by the fact that Brookfield was engaged in continuing negotiations with King for the sale of the property, that several closing documents were drafted but contained terms relating to damaged fuel tanks and asbestos removal, etc. to which Denning objected, and that a final draft of the agreement was never executed. Even though Brookfield alleges that the $630,-000.00 in improvements made to the property were performed as a matter of reliance upon a contract between the parties, Brookfield was nevertheless required to perform such improvements under the terms of the tenant leases and also under the requirements of the deed of trust and, therefore, Brookfield's reliance, if any, must be discounted.

The Court finds that, as a matter of law, CFS is entitled to summary judgment as to Count I of the complaint because there is no genuine issue of material fact concerning a writing which would remove the alleged contract from the Statute of Frauds, nor is there a question of fact as to the existence of an express contract which would permit specific performance.

## COUNT II

Count II of the complaint alleges the breach of an express contract between the parties for which Brookfield seeks monetary damages. For the reasons previously stated this Court finds that there is insufficient evidence from which a trier of fact could determine the existence of an express contract and therefore CFS's motion for summary judgment is granted as to Count II of the complaint.

## COUNT III

Count III of the complaint alleges the breach of an implied contract, both implied in law and implied in fact.

█ "A contract implied in fact is a true contract containing all the necessary elements for a binding agreement except that it is not committed to writing or stated orally in expressed terms but rather is inferred from the parties in the circumstances." *MBA, Inc. v. VNU Amvest Inc.*, 51 B.R. 966 (E.D.Va.1985). The Court must therefore consider the evidence before it regarding the conduct of the parties under the circumstances as presented.

█ Brookfield places considerable emphasis on the fact that it made $630,000.00 worth of improvements to the property at a time when it was in default on the promissory note and claims it would not have done so without having reached an agreement with CFS. However, as the Court has previously noted, Brookfield was obligated to make such improvements under the lease agreements entered into between Brookfield and the tenants of the property as well as under the deed of trust. Brookfield was involved in continuing negotiations to sell the property to King and any improvements to the property would necessarily have made the property more marketable, thus accruing to the benefit of Brookfield. In *Gruen Industries, Inc. v. Biller*, 608 F.2d 274 (7th Cir.1979), the court denied recovery for expenses incurred during negotiations stating that "every business man faces the risk that the substantial cost necessary to bring about a mutually beneficial contract will be lost if the negotiations fail to yield a satisfactory agreement".[2]

Having previously determined that the improvements were required to be performed under the lease agreements and deed of trust and having considered the benefit to accrue to Brookfield by way of

---

**2.** The parties had entered into a negotiated and drafted stock purchase agreement which had not been executed. The plaintiff had expended substantial amounts on attorneys fees but the

court found that the agreement could have fallen through based upon anyone of a number of contingencies contained in the contract.

its negotiations with King to secure a final contract of sale, the Court finds that as there is no genuine issue of material fact and as a matter of law the Court can not infer, from the conduct of the parties under the circumstances set forth, that a contract implied in fact does exist.

Brookfield further claims the existence of a contract between the parties implied in law. It seeks damages related thereto in the amount of $630,000.00.

The court in *In re: MBA, Inc.*, 51 B.R. 966 (E.D.Va.1985) set out three elements necessary to establish a contract implied in law: 1) a benefit conferred upon the defendant by the plaintiff; 2) an appreciation or knowledge of the benefit by the defendant; and 3) the acceptance or retention of the benefit by the defendant in circumstances which make it inequitable for the defendant to retain the benefit without paying for its value. The court further elaborated that the theory of a contract implied in the law should be applied "only in the absence of an express contract or a contract implied in fact, and only when it would be unfair for the recipient to keep a benefit without paying for it." *In re: MBA, Inc.*, 51 B.R. 966; *Blumgarden v. Coyer*, 479 F.2d 201 (D.C.Cir. 1973).

Brookfield contends that a benefit was conferred upon CFS by way of the $630,000.00 worth of improvements made to the property. Brookfield was the owner of the property during the period in which the improvements were performed and the facts clearly indicate that it was to the benefit of Brookfield to complete such improvements in an effort not to violate terms of its leases and to retain the occupancy by the tenants and, consequently, make the property more attractive to any prospective purchaser, in addition to the fact that Brookfield was previously obligated to perform its lease obligations as a condition imposed by the terms of the deed of trust. The facts of the matter indicate that any benefit occurring to CFS would have accrued subsequent to the foreclosure sale on the property and, therefore, as a result would have been of only an indirect benefit to CFS, if any, and only then if it were able to foreclose.

Finally, the court must determine whether the facts could be interpreted in a manner which would make it inequitable for CFS to retain its supposed benefit without paying for its value. The court has found that the benefit of the improvements went to Brookfield as owner of the property and, therefore, the court cannot conclude from the facts before it that the defendant retained the benefits in an inequitable manner. Any benefit acquired or retained by CFS was done so secondarily through the foreclosure sale which was conducted subsequent to the order entered by this court approving the relief from the automatic stay.

The court therefore finds that as a matter of law that there is no genuine issue of material fact from which it could find the existence of a contract implied in law and consequently summary judgment must be granted as to Count III of the complaint.

For the reasons previously discussed, the court cannot find the existence of a question of facts sufficient upon which to proceed to trial. CFS's motion for summary judgment should therefore be granted as to Counts I, II and III of the complaint.

An appropriate order will be entered in conformity with this opinion.