## CIRCUIT COURT OF FAIRFAX COUNTY

In re 8683 Young Court,
Springfield, Virginia

February 4, 1994

Case No. (Chancery) 132197

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter comes on the petitioner's request for aid and direction in connection with a recent foreclosure of the above-referenced property. For the reasons stated in this letter, the Court finds that the foreclosure was valid.

### *Findings of Fact*

On February 15, 1990, Jose V. Basurto and Fabiola Salazar Basurto purchased 8683 Young Court, Springfield, Virginia, from Rex H. Mctyeire. The purchase was subject to an existing first Deed of Trust with a principal of just under $125,000.00. Mctyeire took back a second Deed of Trust in the amount of $58,000.00, and a third Deed of Trust in the amount of $17,000.00. A fourth Deed of Trust was placed on the property at closing in the amount of $1,850.00, securing a note payable to Hector Mendoza. Mctyeire sold the second Deed of Trust to David Broadwell (or to Financial Business Aid, Inc.). Mctyeire sold the third Deed of Trust to "George D. Goetzke and/or assigns."

On August 16, 1993, Helen Goetzke, as Trustee for George D. Goetzke, appointed Jeffrey N. Silverstein and Mitchell I. Mutnick as Substitute Trustees on the third Deed of Trust. In September 1993 the Basurtos were in default on all four Deed of Trust loans. In September 1993 the Substitute Trustees for the third Deed of Trust advertised a

foreclosure sale on the property to be held on October 4, 1993. The terms of the advertisement of sale provided that the property would be sold subject to any senior Deeds of Trust. The advertisement of sale (including the language that the sale would be subject to any senior Deeds of Trust) was read aloud by Mr. Silverstein when he conducted the foreclosure sale. When bids at the foreclosure sale were received, David Broadwell bid $1.00. Helen Goetzke, as Trustee for George D. Goetzke, then bid $130,000.00. There was no further bidding.

Petitioner now claims there has arisen uncertainty as to the actual owner of the property and what steps should be taken next. To this end, he seeks the aid and direction of the Court. Helen Goetzke, Trustee for George D. Goetzke,[1] asserts that there was no valid foreclosure sale. The Basurtos claim that the foreclosure sale was valid and that the Substitute Trustees should proceed with the appropriate steps to close it.

### Rulings of the Court

*1. The sale is not void for confusion over the terms and conditions of sale, or due to advice of counsel.*

Helen Goetzke asserts that there was uncertainty over the terms and conditions of the foreclosure sale. She claims that uncertainty is reflected in post-foreclosure sale letters among the interested parties. She also asserts that she relied in her bid on the advice of Mr. Silverstein, who she said acted as her counsel as well as a Substitute Trustee.

The Court finds that there was no confusion over the terms and conditions of the sale. They were set forth clearly in the advertisement of sale, which was read aloud at the sale just prior to the receipt of bids. "Where the terms and conditions of an auction sale are plain and unambiguous and are plainly announced at the time and place of sale they are binding upon a purchaser at the sale, whether he heard them announced or not and though he may not have understood them." *Definite Contract etc. Ass'n v. Tumin*, 158 Va. 771, 790 (1932). If the amount of Mrs. Goetzke's bid was unexpected, it was not because of confusing terms and conditions of sale. That it may have been upon the advice of counsel is of no consequence to the Court in this proceeding.

---

[1] Unless otherwise noted, "Helen Goetzke" herein refers to Helen Goetzke, Trustee for George D. Goetzke.

*2. Enforcement of the foreclosure purchase is not barred by the statute of frauds.*

Helen Goetzke asserts that the foreclosure sale as a contract for the sale of real estate is subject to § 11–2 of the Code of Virginia. She further asserts that no action may be brought on the sale because there is no sufficient contract, or memorandum or note thereof, in writing signed by her or by her agent.

It is well-settled law in Virginia that a foreclosure sale is subject to the statute of frauds. *Yaffe v. Heritage Savings and Loan*, 234 Va. 577 (1988); *Holston v. Pennington*, 225 Va. 551 (1983); *Smith v. Jones*, 34 Va. (7 Leigh) 165 (1836); *Brent v. Green*, 33 Va. (6 Leigh) 16 (1835). The issue here is whether there was a contract, or memorandum or note thereof, in writing signed by Helen Goetzke or by her agent sufficient to enforce the foreclosure sale. This Court finds that there was and that the statute of frauds is no bar.

After Mrs. Goetzke's bid, the Substitute Trustee passed around a piece of paper to be signed by those attending the sale. Mr. Broadwell received the paper first and wrote at the top "Attended Foreclosure Sale 10/4/93 (Basurto)." He then printed and signed his name. Some of the others attending signed as well, including Mrs. Goetzke (although she signed the attendance list as Helen Goetzke, with no reference to her capacity as Trustee for George D. Goetzke). The Substitute Trustee then wrote at the bottom of the page: "Sold to Helen Goetzke as Trustee for George D. Goetzke $130,000."

From the time of the "fall of the hammer" by the auctioneer (in this case, the Substitute Trustee) at the foreclosure sale, the auctioneer is the agent of the purchaser in connection with the sale until the sale is completed. *Yaffe*, 235 Va. at 558; *Brent v. Green*, 33 Va. (6 Leigh) at 33. The requirement of § 11–2 of the Code that there be a writing signed by a purchaser or her agent is not satisfied only by having the purchaser sign her own name. Rather, it may be satisfied by having the agent sign the purchaser's name. In writing "Sold to Helen Goetzke as Trustee for George D. Goetzke $130,000" at the bottom of the foreclosure sale sheet, the Substitute Trustee made a writing signed by the purchaser by way of her agent that satisfied the statute of frauds. "If he [the auctioneer] makes any written notation of the buyer's name and the amount of his bid for the property sold during this time, it is a sufficient memorandum to take the case out of the statute of frauds." *Holston*, 225 Va. at 558.

Mrs. Goetzke contends that the statute of frauds also is not satisfied because the terms of the sale are not adequately contained in the written memorandum. Specifically, Mrs. Goetzke asserts that there is no reference to the particular property being sold, and that the payment terms (cash versus credit, etc.) are not stated. The Court finds that this argument has no merit and that receipt of parol evidence (as was provided over objection at the hearing on January 6, 1994) to supplement the writing is proper.

The payment terms are clearly found in the advertisement of sale. They require a cash deposit of $10,000 by certified or cashier's check from a successful bidder at the time of sale, with the balance due within thirty days of the date of sale. The advertisement was read by the Substitute Trustee at the sale prior to the receipt of bids. The absence of any information as to payment terms on the memorandum of writing poses no problem.

The question of *what* was being sold is somewhat more difficult. On that issue the writing contains the language "Attended Foreclosure Sale 10/4/93 (Basurto)." Mrs. Goetzke contends that this language does not adequately demonstrate that the property sold was property of the Basurtos. Even if it does, she contends that the specific property (realty versus personalty, or what specific parcel) is not noted and is fatal.

The statute of frauds requires only that the signed writing contain the essential terms of the agreement, not the whole contract. *Reynolds v. Dickson*, 187 Va. 101 (1948). The writing at issue sufficiently identifies the purchaser at foreclosure (Helen Goetzke, Trustee for George D. Goetzke), the consideration ($130,0000), and the property ("Foreclosure Sale for 10/4/93 (Basurto)"). In *Smith v. Jones*, it was sufficient that the property was identified only as "the Fox tract." *Smith*, 34 Va. (7 Leigh) at 166. In *Drake v. Livesay*, the memorandum of writing between seller and buyer identified the property simply as "Emmett and Ethel Dunlow's property" and "this same property I had told you we would sell to you." *Drake v. Livesay*, 231 Va. 117, 120 (1986). The Basurto property is no less identified in the instant writing.

Mrs. Goetzke also contends that the Court should not hear parol evidence to supplement the terms of the writing. But it is clear that the statute of frauds "merely interposes a bar to the enforcement of certain oral contracts, which bar may be removed by proof of a sufficient written memorandum of the transaction. When the bar is removed, it is

the oral contract which is subject to enforcement, not the memorandum. Because the memorandum serves only to remove a bar from the enforcement of the oral contract, the validity of the oral contract may be established by other evidence." *Drake*, 231 Va. at 120. Thus, receipt of parol evidence at the hearing was proper, and the Court may and does rely upon it to confirm the entire terms of the foreclosure sale.

3. *The sale is not void for a mistake in the advertisement.*

In the foreclosure advertisement the Substitute Trustee stated that the property was being sold pursuant to a Deed of Trust recorded at Deed Book 7531, page 1147. In actuality, the Deed of Trust under which he was acting was recorded at Deed Book 7531, page 1151. It was the second Deed of Trust, not the third Deed of Trust, that was recorded at Deed Book 7531, page 1147. Mrs. Goetzke asserts that the mistake in the advertisement invalidates the sale. The Court holds otherwise.

Section 55–59.3 requires that foreclosure advertisements:

1. "Shall set forth a description of the property to be sold, which description need not be as extensive as that contained in the deed of trust."

2. "Shall identify the property by street address, if any, or, if none, shall give the general location of the property with reference to streets, routes, or known landmarks."

3. "Shall also include the time, place and terms of sale and shall give the name or names of the trustee or trustees."

4. "Shall set forth the name, address and telephone number of such person . . . as may be able to respond to inquiries concerning the sale."

The notice here meets those requirements. The Substitute Trustee also attempted to include the deed book and page number of the recordation of the deed of trust being foreclosed on. The Court agrees that all information as contained in the advertisement should be accurate. But the requirement of foreclosure advertisements is substantial compliance so long as the rights of parties are not affected in any material way. *Bailey v. Pioneer Federal Savings and Loan Association*, 210 Va. 558 (1970). There was no evidence that the rights of any party were affected adversely in any material way. There was no evidence that any bidder did not understand that it was the third trust that was being bid on. Certainly the successful bidder did, as it was her own trust and her own foreclosure advertisement that was at issue. There

was also no evidence of other foreclosure sale attendees who did not bid, or of interested parties who did not attend, as a result of the misidentification of the deed of trust in the advertisement.

4. *The sale is not void for lack of authority of Helen Goetzke to act.*

Helen Goetzke asserts that she lacked authority to substitute Mr. Silverstein and Mr. Mutnick as trustee on the property, and to direct them to foreclose. The Court finds that Mrs. Goetzke had such authority.

Under § 55–60(9) of the Code of Virginia and the terms of the deed of trust, only the holder, beneficiary, or their assigns of a deed of trust note has the power to appoint substitute trustees. Under the terms of the deed of trust only the holder of the note may direct the trustees to foreclose. The note was sold by Mctyeire to George D. Goetzke and/or assignees. There is no evidence that George Goetzke ordered or authorized the substitution of trustees, or directed the substitute trustees to foreclose. Indeed, the evidence is uncontradicted that those actions were taken solely by Helen Goetzke. The issue is whether she had authority to do so.

Authority on the part of Helen Goetzke to so act must be actual authority, not apparent authority. Apparent authority would require a "holding out" by the principal (George Goetzke) that another (Helen Goetzke) possessed certain authority, thereby inducing others reasonably to believe that such authority exist. There was no evidence that George Goetzke, by affirmative action or by inaction, "held out" Helen Goetzke as having authority in relation to the note. Although Helen Goetzke clearly believed she had such authority, the mere assertion of the agent of such authority is insufficient to bind the principal.

The issue of actual authority [is] did the note become part of the trust administered by Helen Goetzke so as to give her authority to direct the substitution of trustees and to order the foreclosure? The Court finds that it did.

The Trust Agreement was executed by George Goetzke as trustor and Helen Goetzke as trustee on January 27, 1988. Under that instrument George Goetzke transferred to Helen Goetzke all realty and personalty he owned at the time it was executed. Helen Goetzke agreed to hold and administer such property "and any other property that may be received by the Trustee as part of this Trust (all of which is here and referred to as the Trust Estate)."

Paragraph 11 of the Trust Agreement provides the Trustee with the power:

> (e) to take any action with respect to conserving or realizing upon the value to any trust property, and with respect to foreclosures, reorganization or other changes effecting the trust property; to collect, pay, contest, compromise or abandon demand of or against the trust estate . . . .

> (i) to receive additional property from any source and add it to and commingle it with the trust property . . . .

Paragraph 11 of the Trust Agreement further provides that:

> (t) The foregoing specific powers are set forth by way of implication and not by way of limitation, and, except as otherwise expressly limited herein, the Trustee shall have, all and singular, all of the powers, duties and privileges which may be reasonably proper, necessary, or incident to the carrying out of this Trust whether herein specifically enumerated or not, it being declared to be the intention hereof that the Trustee shall be covered with all the powers and authority reasonably necessary or proper in carrying out such Trust.

Helen Goetzke clearly had authority to direct the substitution of trustees and to order them to foreclose if the note became part of the Trust Estate. The court finds that it did.

Helen Goetzke testified that George Goetzke was not competent in 1990, and was unaware of the existence of the note. Helen Goetzke purchased on behalf of George Goetzke. She told Mctyeire that she was buying the note for the trust, and she intended that it be endorsed over to the trust by Mctyeire. However, it was endorsed instead by Mctyeire to George Goetzke individually. Helen Goetzke further testified that the funds to purchase the note were funds from an individual George Goetzke account, not a Trust account. But she also testified that all of George Goetzke's property and possessions in 1990 were held under the trust by Helen Goetzke as Trustee. Following its purchase, Helen Goetzke had physical possession of the note (which tends to show that it was "received by" or "delivered to" her as trustee and thereby became part of the trust). The first five payments made by the

Basurtos under the note were made payable to George Goetzke.[2] After the first five payments Helen Goetzke contacted the Basurtos and requested that all payments thereafter be made payable to her. The next eighteen payments were made payable and received by Helen Goetzke. This also tends to show receipt by or delivery to the trustee of the note as trust property.

Mr. Silverstein testified that Helen Goetzke advised him that the note belonged to the trust. Helen Goetzke testified that she considered the note to be and treated the note as trust property.

The Court finds that the note became part of the Trust Estate at the time of its acquisition on behalf of George Goetzke. As part of the trust estate, Helen Goetzke as trustee had authority to take action in relation to the note and the trust instrument. Her authority included the right to direct the substitution of trustees and to order the substitute trustees to foreclose.

For these reasons, the Court finds that the foreclosure was valid.

---

[2] The first five payments actually were made payable to "Jorge Goetzke." Mr. Basurto testified that "Jorge Goetzke" was George Goetzke, and that Basurto wrote "Jorge" instead "George" as a consequence of his Hispanic background.