UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LOGISTICS TRANSPORTATION COMPANY,
INCORPORATED,
<u>Plaintiff-Appellant,</u>

v.                                                                                    No. 96-2750

TIMBER TRUCKING COMPANY,
INCORPORATED,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-96-391-3)

Argued: December 4, 1997

Decided: April 27, 1998

Before NIEMEYER, Circuit Judge, WILSON, Chief United States
District Judge for the Western District of Virginia, sitting by
designation, and JONES, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Gant Shuford, LECLAIR RYAN, P.C., Richmond,
Virginia, for Appellant. Samuel Vernon Priddy, III, SANDS,
ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appel-

lee. **ON BRIEF:** Steven W. Morris, LECLAIR RYAN, P.C., Richmond, Virginia, for Appellant. Albert M. Orgain, IV, Allan M. Heyward, Jr., Henry C. Spalding, III, SANDS, ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this appeal from a grant of summary judgment, the plaintiff-appellant contends that the district court erred in deciding that recovery under the contract at issue was barred because the written memorandum lacked an essential term of the contract. We hold that the statute of frauds does not bar an action on this contract, and reverse.

I

Logistics Transportation Company, Inc. ("Logistics"), the plaintiff below and the appellant here, is a corporation which acts as a broker or agent for motor carrier transportation services. On February 9, 1994, it entered into a written "Agency Agreement" with Timber Trucking Company, Inc. ("Timber"), a corporation in the trucking business. The Agency Agreement provided, among other things, that Logistics was to solicit and obtain new business for Timber.

Before the Agency Agreement was signed, a third entity, Manchester Tank Company ("Manchester"), a manufacturer of propane tanks in Petersburg, Virginia, asked Logistics to locate a new motor carrier for its freight. Logistics introduced Manchester to Timber, and at the time Timber and Logistics signed the Agency Agreement they were in the process of negotiating with Manchester for its business. In anticipation of securing such business, Timber and Logistics provided in their Agency Agreement that Timber would pay Logistics a five

2

percent commission on Manchester's trucking business. For all other business, the Agency Agreement directed that Logistics would receive an eight percent commission. The Agency Agreement also provided that either party might terminate "this agreement" for cause or otherwise by seven days written notice.

On April 29, 1994, Manchester, Timber and Logistics entered into a written agreement (the "Manchester Agreement"). The preamble recited that it was a "long-term contract . . . for the purpose of moving finished and raw products within the eastern United States and Canada." The Manchester Agreement provided that Manchester was to pay Timber $1.65 per loaded mile, with a minimum charge per load of $250 and drop charges of $35 per occurrence. Timber was to maintain six to eight trailers at Manchester's facility at all times, and Logistics was to serve as Timber's "transportation agent," dispatch loads, monitor fuel costs and the quality of service on a regular basis, and "settle all disputes" between Timber and Manchester. The Manchester Agreement had a term of five years.

At Logistics' request, the amount of commission that Timber was to pay to Logistics was omitted from the Manchester Agreement in order to keep the figure secret from Manchester.

The relationship between Timber and Logistics continued until March of 1996, during which Logistics received a commission of five percent of the amount paid by Manchester. At that time Timber wrote Logistics giving seven days notice of the termination of the Agency Agreement. Thereafter, Logistics received no further commissions from the Manchester business.[1] As a result, Logistics filed the present action against Timber in state court, which Timber removed, based on diversity jurisdiction, to the district court below. Logistics claimed that Timber had breached the Manchester Agreement by refusing to

_____

[1] The record does not reflect whether Logistics performed any services under the Manchester Agreement after receiving notice of termination of the Agency Agreement. At oral argument, counsel for Timber represented that Manchester has acquiesced in Logistics' forced removal from the business relationship. Presumably, therefore, Logistics has not incurred further cost of performance, although it has lost any anticipated profit under the contract.

3

pay further commissions, and also asserted causes of action on implied contract and quantum meruit.

After limited discovery in the case, Timber moved for summary judgment in its favor, relying on the Agency Agreement's seven-day termination clause, and contending that notice under this provision also canceled Logistics' right to commissions under the Manchester Agreement.

The district court granted summary judgment to Timber, but on the sole ground that the statute of frauds made the Manchester Agreement unenforceable since it could not be performed within a year. The court held that because the writing lacked an essential term -- the compensation for Logistics -- it was insufficient as a written memorandum. Following summary judgment, Logistics moved for reconsideration on the ground that the statute of frauds had not been argued by the parties. However, the district court denied Logistics' motion for reconsideration and this appeal followed.

II

Logistics argues on appeal that the district court should not have decided the case sua sponte based on the statute of frauds, since doing so denied Logistics the opportunity to respond and present evidence on the issue. As Logistics points out, prior notice would have allowed Logistics to present evidence of possible defenses to the statute of frauds.[2]

While a remand would be proper on this procedural ground,[3] we

_____

[2] Although it is not clear from this record, Logistics might have shown that a factual question existed as to whether Timber was estopped from asserting the statute of frauds, on the ground that Logistics changed its position in reliance upon the contract. See T... v. T..., 224 S.E.2d 148, 152 (Va. 1976). The presence of a genuine issue of material fact in this regard would have precluded summary judgment. Fed. R. Civ. P. 56(c).

[3] Summary judgment cannot be granted on a ground not argued without the requisite ten days notice afforded by Fed. R. Civ. P. 56(c). Judwin Properties, Inc. v. United States Fire Ins. Co., 973 F.2d 432, 436 (5th Cir. 1992). The statute of frauds had been pleaded by Timber in its answer, but not asserted in its motion for summary judgment.

4

believe that the direct answer to the appeal is that the district court erred in its analysis of the applicability of the statute of frauds. Accordingly, we will reverse on that basis.

The Manchester Agreement was a triparte contract. Each of the three parties had certain defined responsibilities. The consideration to be paid by Manchester to Timber was expressly set forth, in the form of $1.65 per loaded mile, with certain minimum and drop charges. What was not set forth in the writing was the portion of that payment to be received by Logistics. The district court held that this provision was an essential term of the agreement, and without it, there was not a sufficient memorandum of the contract, within the meaning of the statute of frauds.

We hold, however, that the omission of the amount of Logistics' commission was not, under these circumstances, a violation of the statute of frauds.

III

The purpose of the statute of frauds is to prevent frauds based upon oral proof of purported contracts. See Drake v. Livesay, 341 S.E.2d 186, 188 (Va. 1986).**4** The written memorandum required to satisfy the statute of frauds is not the contract itself, but must be sufficient to assure that such a contract does exist and thus serve the purpose of the statute. Id. The writing must set forth the essentials of the agreement, and the contract's consideration is frequently characterized as an essential element, at least where it is executory. See 4 Samuel Williston & Walter H. E. Jaeger, A Treatise on the Law of Contracts § 570 (3d ed. 1961 & Supp. 1997).**5**

_____

**4** Since this is a diversity case, we must apply the forum state's conflict of laws rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). The district court and the parties assumed that Virginia law applies. The traditional view is that the forum's statute of frauds is to be applied, where, as in Virginia, the statute operates only to affect the enforceability of the contract, and not its validity. See Stein v. Pulaski Furniture Corp., 217 F. Supp. 587, 590-91 (W.D. Va. 1963).

**5** The Virginia statute of frauds contains the proviso that "[t]he consideration need not be set forth or expressed in the writing, and it may be

5

However, it is clear that a missing term of a memorandum may be supplied by a separate related document, even if the separate document is unsigned. See Jordan v. Mahoney, 63 S.E. 467, 468 (Va. 1909); Restatement (Second) Contracts § 132 cmt. c (1979). The Agency Agreement, although unsigned by Timber, is thus available to supply the missing term of Logistics' commission under the Manchester Agreement.

Under Virginia law, it is necessary that the signed paper refer to the unsigned writing "in clear and distinct terms." American Indus. Corp. v. First & Merchants Nat'l Bank, 219 S.E.2d 673, 676 (Va. 1975). As stated by the Virginia Supreme Court in its fullest exposition of the issue:

> It is well settled that where the memorandum of the bargain between the parties is contained in separate pieces of paper, and these papers contain the whole bargain, they form together such a memorandum as will satisfy the statute, provided the contents of the signed paper make such reference to the other written paper, or papers, as to enable the court to construe the whole of them together as constituting all the terms of the bargain. But if it be necessary to produce parol evidence in order to connect a signed paper with others unsigned, by reason of the absence of any internal evidence in the contents of the signed paper to show a reference to or connection with the unsigned papers, then the several papers taken together do not constitute a memorandum in writing of the bargain so as to satisfy the statute. It is not necessary that the signed paper should refer to the unsigned paper as such. It is sufficient to show that a particular unsigned paper, and nothing else, can be referred to, and parol evidence is admissible for that purpose.

_____

proved (where a consideration is necessary) by other evidence." Va. Code Ann. § 11-2 (Michie 1993). While there is no Virginia authority on point, statutes similar to Virginia's nevertheless have been construed to require the memorandum to state the consideration, where the contract involved bilateral promises, and the consideration in question was the defendant's promise. See, e.g., Reid v. Diamond Plate-Glass Co., 85 F. 193, 203 (6th Cir. 1898).

Darling v. Cumming, 23 S.E. 880 (Va. 1896) (citations omitted).

Here the signed writing, the Manchester Agreement, does not expressly refer to the unsigned writing, the Agency Agreement. However, it does show substantial connection with it. Both documents relate to Logistic's agency duties in relation to Timber's trucking business, and both refer to Manchester as a customer for that business.

The two agreements are certainly separable in that the Agency Agreement involved a range of possible relationships and the Manchester Agreement was particularized as to one client, Manchester. However, while the sufficiency of the relationship between writings is always a matter of degree under the statute of frauds, Williston, supra, § 583, we find the two writings here are sufficiently connected to provide a memorandum that satisfies the statute of frauds.

In summary, we hold that the statute of frauds does not bar Logistics' claim. Accordingly, we reverse the grant of summary judgment and remand the case to the district court for a determination of the parties' rights under the contract.

REVERSED AND REMANDED