# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Birdneck Villas
Condominium Association
Board of Directors et al.

v.

Birdneck Villas, L.L.C., et al.

v.

McQ Builder and Developers, Inc.

v.

Old Dominion Roofing & Siding,
Tidewater Applicators,
and Lowery Construction

April 2, 2007

Case No. CL04-3579

BY JUDGE WILLIAM R. O'BRIEN

This matter is before the court on the demurrers and special pleas of the fourth-party defendants to the fourth-party complaint. McQ Builder and Developers, Inc. (hereinafter "McQ") was initially a defendant in this case, but it was dismissed from the original action. Thereafter, the defendant, Birdneck Villas, L.L.C., brought McQ, who was the general contractor on the construction of Birdneck Villas, in as a third-party plaintiff to indemnity the defendant with respect to the alleged defects in two of the Birdneck Villas

condominium units, in the event that the defendant loses the original lawsuit. In turn, McQ filed a fourth-party complaint against Old Dominion Roofing & Siding (hereinafter "Old Dominion"), Tidewater Applicators (hereinafter "Tidewater"), and Lowery Construction (hereinafter "Lowery"). Old Dominion apparently provided framing materials and services on the project. Tidewater provided and installed EIFS (synthetic stucco), and Lowery provided and installed vinyl siding and roofing. In its fourth-party complaint, McQ argues that, in the event it is required to indemnify the defendant in this case, Old Dominion, Tidewater, and Lowery should, in turn, be required to indemnify McQ. Ultimately, McQ prays for recovery on indemnity, contribution, and/or breach of contract grounds.

### Special Plea of the Statute of Repose

Old Dominion has asserted a special plea of the statute of repose. It argues that, under Virginia Code § 8.01-250, a five-year statute of repose had already expired when McQ brought its fourth-party complaint against it and the other fourth-party defendants. The parties have stipulated, for the purpose of these motions, that the fourth-party defendants last performed services on Buildings 5 and 6 on December 21, 1999, and July 25, 2000, respectively. Since the fourth-party complaint was not filed until May 8, 2006, Old Dominion argues that the action was brought outside the five-year statute of repose.

Virginia Code § 8.01-250 provides, in part:

> No action to recover for any injury to property, real or personal, or for bodily Injury or wrongful death, arising out of the defective and unsafe condition of an Improvement to real property, nor any action for contribution or Indemnity for damages sustained as a result of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction, or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction.

One of the main issues with regard to this special plea is whether the statute of repose applies to contract actions, as well as tort actions. While neither party can cite any Virginia Supreme Court decisions that speak specifically to this issue, there are several Fourth Circuit and Virginia circuit court decisions that state that § 8.01-250 applies only to tort actions, not to contract actions. For instance, in

*Fidelity & Deposit Co. v. Bristol Steel & Iron Works, Inc.*, the Fourth Circuit Court of Appeals expressly stated that "the statute, by its express terms, is restricted in its application to what are in effect tort actions to recover for 'injury' to property or persons and not to actions in contract." 722 F.2d 1160, 1162 (4th Cir. 1983); *see also Deton Hampton & Assocs. v. Washington Metro. Area Transit Auth.*, 943 F.2d 385, 381-82 (4th Cir. 1991). Furthermore, in *Beckner v. Twin City Fire Ins. Co.*, the Roanoke Circuit Court held specifically with regard to § 8.01-250 that "[t]he statute of repose applies only to tort actions." 58 Va. Cir. 544, 554 (Roanoke City 2004); *see also BurgerBusters, Inc. v. Ratley Constr. Co.*, 45 Va. Cir. 133, 134-35 (Norfolk 1998).

Therefore, federal and circuit court authority clearly indicates that the statute of repose contained in § 8.01-250 does not apply to contract actions. However, Old Dominion argues that the Supreme Court of Virginia has implicitly come to the opposite conclusion. In *Baker v. Poolservice Co.*, the court sustained a plea in bar based on the statute of repose where the complaint alleged counts of negligence, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness. 272 Va. 677 (2006). Old Dominion argues that *Baker* controls, since the Supreme Court clearly applied the statute of repose to the warranty-based counts of the complaint, as well as the tort counts.

However, *Baker* can be distinguished from the case at hand. The Supreme Court of Virginia has also held that "[i]n determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 258 Va. 553, 558 (1998). Moreover:

> [i]f the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Id.* (quoting *Oleyer v. Kerr*, 217 Va. 88, 90 (1976)). In *Baker*, the plaintiff alleged both negligence and breach of warranty claims, but the essence of the action was tort-based; the case was essentially a wrongful death action that resulted from a child's becoming pinned underwater to the drain of a spa and

ultimately drowning. 272 Va. 677, 681 (2006). Therefore, though it does not explicitly address the subject in its opinion, the Virginia Supreme Court's decision to apply the statute of repose to the breach of warranty claims in *Baker* was likely because, overall, the case sounded in tort.

On the other hand, the fourth-party complaint in this case alleges that the relationship between McQ and the fourth-party defendants is purely contract-based; McQ alleges that, if it is liable to Birdneck Villas in this case, it is due to the fourth-party defendants' breach of their contract with McQ. In other words, any duty that the fourth-party defendants have toward McQ arises from their alleged contract. Since the weight of authority indicates that the statute of repose does not apply to contract actions, it does not apply here either.

McQ asserts one additional argument, that Virginia Code § 8.01-6.1 allows the fourth-party complaint to relate back to the date that it originally filed a third-party complaint against the fourth-party defendants, or February 3, 2005. Section 8.01-6.1 states in part:

> Subject to any other applicable provisions of law, an amendment of a pleading changing or adding a claim or defense against a party relates back to the date of the original pleadings for purposes of the statute of limitations if the court finds (i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading, (ii) the amending party was reasonably diligent in asserting the amended claim or defense, and (iii) parties opposing the amendment will not be substantially prejudiced in litigating on the merits as a result of the timing of the amendment.

This section does not apply to this situation, for two reasons. First, it allows relation-back for the purpose of the statute of limitations. Here, we are dealing with a statute of repose. Second, this is not a situation where McQ amended its pleading against the fourth-party defendants. Instead, McQ filed an entirely new pleading, the fourth-party complaint. Accordingly, § 8.01-6.1 does not apply, and the date of the filing of the fourth-party complaint does not relate back. For all of these reasons, Old Dominion's special plea of the statute of repose is overruled.

*Special Plea of the Statute of Limitations*

In its special plea, Tidewater states that the last time it worked on one of the subject buildings in this case was June 2000. As stated above, the parties have stipulated, for the purpose of these motions, that the fourth-party defendants last performed services on Buildings 5 and 6 on December 21, 1999, and July 25, 2000, respectively. McQ's fourth-party complaint was not filed until May 2006. Accordingly, Tidewater argues that the fourth-party complaint was filed well outside the statute of limitations that is applicable to breach of contract actions.

Virginia Code § 8.01-248(4) provides that actions upon unwritten contracts must be brought within three years from the accrual of the cause of action. (There does not seem to be any dispute here that there was no written contract between McQ and the fourth-party defendants.) Moreover, according to Va. Code § 8.01-230, the statute of limitations on a breach of contract action accrues at the time that the breach occurs. Tidewater is correct in its assertion that the breach of contract claim is barred by the statute of limitations, since the breach had to have occurred by 2000 at the latest, and this action was filed well after three years had passed. Therefore, Tidewater's special plea of the statute of limitations is sustained with regard to the breach of contract claim.

*Demurrers*

Because the statute of limitations bars the breach of contract claim, it is not necessary for this court to address Lowery's demurrer to that part of the complaint. However, Lowery and Tidewater have also demurred to McQ's contribution and indemnity claims.

The Virginia Supreme Court has stated that contribution:

> does not arise out of any express agreement or contract, but is based on broad principles of equity that, where two or more persons are subject to a common burden, it should be borne equally. The law implies a contract between them to contribute ratably toward the discharge of the obligation.

*Van Winckel v. Carter*, 198 Va. 550, 585 (1958). Again, McQ has alleged that, if it is liable to the third-party plaintiff under any theory of law, it is because of the shortcomings of the work done by the fourth-party defendants and that they should therefore be required to pay the resulting damages. However, McQ

specifically states that it is only secondarily liable to the third-party plaintiff for any damages in this case, not that it and the fourth-party defendants share a "common burden" that should be borne "equally." Instead, McQ is proceeding on a theory that the fourth-party defendants should have to reimburse it for *all* damages in this case, not just their share. Accordingly, McQ has not adequately alleged a claim of contribution, and Lowery and Tidewater's demurrers to the contribution claim are sustained.

In *Winchester Homes, Inc. v. Hoover Universal, Inc.*, the Fairfax Circuit Court seemed to accurately describe Virginia law relating to indemnity.

> There are two basic types of indemnity: express indemnity and implied indemnity. A claim based upon express indemnification arises out of a written agreement between the parties, implied indemnification arises from the relationships between the parties. Generally, the principle of implied indemnity arises from equitable considerations. A claim for Implied Indemnity arises when the Indemnitee, the person seeking to assert implied indemnification, has been required to pay damages caused by an indemnitor, a third-party. In the implied indemnification context, the indemnitee is liable to the injured party because of some positive duty created by statute or common law, however, the actual cause of the injury to the third-party was the act of the indemnitor.

39 Va. Cir. 107, 114 (Fairfax 1996) (citations omitted). Moreover, a federal court held in *Hanover Ins. Co. v. Corrpro Cos.* that, "although an implied right of indemnity may be read into some contracts, only unique factors or a special relationship between the parties give rise to such a right." 312 F. Supp. 2d 816, 821 (E.D. Va. 2004) (quoting *Transdulles Ctr., Inc. v. USX Corp.*, 976 F.2d 219, 228 (4th Cir. 1992)). (The courts have also found a tort-based action for "equitable indemnity" in some cases, but, again, McQ asserts its claim against the fourth-party defendants on an express or implied contract theory.)

In this case, there is no written agreement between McQ and the fourth-party defendants. Therefore, any right to indemnity has to be implied, and there has to be a special relationship between the parties that would give rise to such a right. There do not appear to be any Virginia cases that are particularly instructive as to when a right to indemnity should be implied in a contract. However, there is law from other jurisdictions that is useful. For instance, in *Transdulles*, the Fourth Circuit held that a "simple contract supplied no basis to find an implied contract for indemnification." 976 F.2d at

226; see also *Dacotah Mktg. & Research, L.L.C. v. Versatility, Inc.*, 21 F. Supp. 2d 570, 580 (E.D. Va. 1998) (refusing to recognize implied indemnity "where no unique relationship existed beyond the fact of the contract itself."). However, the Fourth Circuit has held that a unique relationship existed between a shipper and a carrier where "certain relevant federal statutes and Interstate Commerce Commission regulations" had to be read into the contract between the parties, as well as between a ship-owner and a stevedoring company, because the latter had "non-delegable duties imposed in maritime law by the seaworthiness doctrine." *International Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.*, 838 F.2d 124, 127-28 (4th Cir. 1988) (summarizing relevant Fourth Circuit case law).

Maryland courts have held that "the mere relationship between vendor and vendee does not, of itself, suffice to produce an implied contractual right of indemnification. . . ." *Hanscome v. Perry*, 75 Md. App. 605, 616 (1988). Additionally, as Tidewater points out in its brief, the North Carolina Court of Appeals refused to imply a contractual right to indemnity between a contractor and its subcontractors where the "plaintiff [had] not alleged any circumstances tending to show the existence of an indemnification agreement, either written or oral" and where "there [was] nothing in the allegations that [suggested] establishing an indemnitor/indemnitee relationship was at the essence or intent of the agreement between plaintiff and the subcontractors." *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 40 (2003). The court also noted that "[f]or this Court to read a right of indemnity implied-in-fact into such bald allegations would be to do so in every general and subcontractor agreement, thus infringing upon this state's long standing and coveted principle of freedom of contract." *Id.* at 41.

Based on the above law, it does not seem as though indemnity should be implied into the oral contracts between McQ and the fourth-party defendants. Here, we have no unique factors. In fact, we have nothing but a simple contract between the parties, which does not give rise to a special relationship. Accordingly, Lowery and Tidewater's demurrers to the indemnity claim are also sustained.

To summarize, Old Dominion's special plea of the statute of repose is overruled. However, Tidewater's special plea of the statute of limitations with respect to the breach of contract claim in the fourth-party complaint is sustained, and the breach of contract claim is dismissed as to all of the fourth-party defendants. Additionally, Lowery and Tidewater's demurrers to the indemnity and contribution claims in the fourth-party complaint are sustained. McQ is granted fourteen days to amend its complaint.