Present:  All the Justices

C. PORTER VAUGHAN, INC., REALTORS

v.  Record No. 090110          OPINION BY JUSTICE DONALD W. LEMONS
                                      February 25, 2010
MOST REVEREND FRANCIS X. DILORENZO,
BISHOP OF THE CATHOLIC DIOCESE OF RICHMOND

            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Beverly W. Snukals, Judge

     In this appeal from the dismissal of an action for real

estate brokerage commissions, we consider whether the trial

court erred when it sustained a demurrer of the defendant, the

Most Reverend Francis X. DiLorenzo ("Bishop DiLorenzo"), to the

amended complaint of C. Porter Vaughan, Inc., Realtors

("Vaughan") on the grounds that its claim for a breach of an

oral agreement was barred by the statute of frauds.

                 I.   FACTS AND PROCEEDINGS BELOW

     Vaughan filed a complaint against Bishop DiLorenzo, the

Bishop of the Catholic Diocese of Richmond, alleging that

Bishop DiLorenzo had "employed" Vaughan, through its agent

Marie Beitz ("Beitz"), to act as the real estate broker in the

offering for sale of several properties located on North Laurel

Street and South Cathedral Place in the City of Richmond ("the

Chancery Buildings").  The complaint further alleged that

Vaughan marketed the property to several potential purchasers,

including Virginia Commonwealth University ("VCU"), the

ultimate purchaser of the property.  As a result of these marketing efforts, Vaughan alleged that it was owed a real estate commission in the amount of $242,400 for its services rendered in procuring a purchaser for the Chancery Buildings.

Bishop DiLorenzo filed a demurrer to Vaughan's complaint in which he argued that the complaint failed to satisfy the requirements of Code § 11-2(7), namely because the complaint "fail[ed] to allege a writing which complie[d] with the statute of frauds and as such any alleged contract is unenforceable." The trial court sustained Bishop DiLorenzo's demurrer and granted Vaughan leave to amend its complaint.

In its amended complaint, Vaughan repeated its assertion that it marketed the Chancery Buildings to several potential buyers, including VCU, on behalf of Bishop DiLorenzo. Additionally, Vaughan alleged that Bishop DiLorenzo "entered into an oral agreement" for Vaughan to act as the real estate broker in the offering for sale of the Chancery Buildings.

As evidence of the purported oral agreement between the parties, Vaughan referred to several writings.  The first was a November 28, 2006 letter to Beitz from the director of real estate and insurance services for VCU ("the VCU Letter").  The VCU Letter requested Beitz's "client's permission to allow VCU to order one or more appraisals of the" Chancery Buildings.  On a signature line labeled "APPROVED," Monsignor Thomas F. Shreve

("Shreve") signed the VCU Letter. In its amended complaint, Vaughan refers to Shreve as "Vicar General of the defendant."

A second writing, dated March 2, 2007, was a letter from Bishop DiLorenzo to Beitz in which he thanked her for "forwarding the contract from David Solodar to purchase the Chancery buildings." Bishop DiLorenzo informed Beitz that he was "unable to accept [Solodar's] offer at the current bid." The letter informed Beitz that the Chancery Buildings would be "off the market for 14 days from today's date" so the Cathedral of the Sacred Heart could pursue its option to buy the Chancery Buildings. Bishop DiLorenzo then noted that after consultation with his staff and attorney, he was "establishing the sale price of the Chancery Buildings at $5,600,000.00." Bishop DiLorenzo signed this letter.

The third writing consisted of a purchase agreement for the Chancery Buildings ("the Solodar Agreement") between Bishop DiLorenzo and David Solodar ("Solodar"). The Solodar Agreement identified Bishop DiLorenzo as the seller, and Solodar as the buyer, of the Chancery Buildings, which were identified in the Basic Terms and Definitions section of the agreement. The writing provided for a purchase price of "approximately Five Million Dollars" and set forth the terms of purchase.

The Solodar Agreement also contained a paragraph entitled "BROKERAGE COMMISSION," which stated, in pertinent part,

3

[i]t is understood that the Seller has engaged Marie Beitz of C. Porter Vaughan to represent [Bishop DiLorenzo] in the transaction. Seller shall, so long as Closing occurs, be responsible for the commission in the amount of four percent (4%). Other than Marie Beitz, neither party has engaged the services of a real estate broker or agent in negotiation or consummating the Closing of the conveyance of the [Chancery Buildings]. . . . This paragraph shall survive the Closing or termination of this Agreement.

Bishop DiLorenzo signed the Solodar Agreement on March 8, 2007.

The fourth writing Vaughan introduced was a letter, dated August 6, 2007, from Bishop DiLorenzo to Beitz. The letter read,

Dear Marie:

Thank you for your letter of July 23, 2007 regarding the withdrawal of the offer to purchase the property on Cathedral Place and Laurel Street.

Certainly we both regret that the sale did not go through. These things happen, and I just want you to know that I appreciate all you did on our behalf.

With gratitude and every best wish, I remain,

Sincerely yours in Our Lord,

Most Rev. Francis X. DiLorenzo

The letter bore the signature "Francis X. DiLorenzo."

Vaughan's amended complaint alleged that after the Solodar Agreement was terminated, Bishop DiLorenzo entered into negotiations with the VCU Real Estate Foundation without Vaughan's knowledge, and he sold the Chancery Buildings by deed

4

dated December 14, 2007 to the VCU Real Estate Foundation for $4,040,000.  Despite Vaughan's assistance in marketing the Chancery Buildings to the VCU Real Estate Foundation, Bishop DiLorenzo refused to pay the real estate commission to which Vaughan claims it is entitled.  The amended complaint alleged that Bishop DiLorenzo owed Vaughan $242,400.

In response to Vaughan's amended complaint, Bishop DiLorenzo filed a demurrer, in which he contended that Vaughan failed to plead either "a written []or oral agreement for the sale of real estate which sets out the necessary terms to include parties, duration and compensation."  While Bishop DiLorenzo conceded that the "documents attached to the Amended Complaint evidence the existence of an oral contract for the sale of real estate," he argued that "[n]one of those documents, however, read together, constitute a writing required by Virginia Code § 11-2(7)."

The trial court sustained Bishop DiLorenzo's demurrer and ordered Vaughan's amended complaint dismissed with prejudice. In its accompanying letter opinion, the trial court found that "the only writing signed by the defendant which ostensibly relates to the ultimate sale of the property is an August 6, 2007 letter from Defendant to Marie Beitz, Plaintiff's agent." The trial court held that the contents of that letter were "not sufficient to prove that Defendant intended for Beitz to

receive a commission for her assistance in the sale of his property," and the statements in the letter "cannot be considered the essential terms of the contract."  Regarding the Solodar Agreement, the trial court held that its brokerage commission clause "cannot be imputed to the sale" of the Chancery Buildings to VCU.

Vaughan timely filed his notice of appeal and we granted an appeal on the following assignments of error:

1.  The trial court erred in finding that there were not writings between the parties sufficient to overcome the requirements of Va. Code § 11-2, commonly referred to as the Statute of Frauds.  Such a finding is contrary to the intent and requirements of the Statute of Frauds.

2.  The trial court erred in finding that exhibit 5 attached to the amended complaint was the "only writing signed by the defendant which ostensibly relates to the ultimate purchase of the property."

## II.  ANALYSIS

### A.  Standard of Review

"A demurrer admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations.  A demurrer does not, however, admit the correctness of the pleader's conclusions of law."  Yuzefovsky v. St. John's Wood Apts., 261 Va. 97, 102, 540 S.E.2d 134, 136-37 (2001) (internal citation omitted).  Accordingly, we will consider the facts stated, and those reasonably and fairly implied and inferred, in the [complaint] in a light most favorable to the plaintiff, but we will review the sufficiency of the legal conclusions ascribed to those facts de novo.

6

<u>Taboada v. Daly Seven, Inc.</u>, 271 Va. 313, 317-18, 626 S.E.2d 428, 429 (2006), <u>aff'd on reh'g</u>, 273 Va. 269, 270, 641 S.E.2d 68, 68 (2007).

## B. Statute of Frauds

Code § 11-2(7) provides, in pertinent part:

> Unless a promise, contract, agreement . . . or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought . . . [u]pon any agreement or contract for services to be performed in the sale of real estate by a party defined in § 54.1-2000 or § 54.1-2101.

Code § 11-2 closes by stating, "[t]he consideration need not be set forth or expressed in the writing, and it may be proved (where a consideration is necessary) by other evidence."

"The purposes of Code § 11-2 are to provide reliable evidence of the existence and terms of certain types of contracts and to reduce the likelihood that contracts within the scope of this statute can be created or altered by acts of perjury or fraud." <u>Lindsay v. McEnearney Assocs., Inc.</u>, 260 Va. 48, 53, 531 S.E.2d 573, 575 (2000). Code § 11-2(7) "was intended to protect the public from unscrupulous real estate agents and brokers." <u>H-B Ltd. P'ship v. Wimmer</u>, 220 Va. 176, 179, 257 S.E.2d 770, 773 (1979).

The issue in this case is whether the writings signed by Bishop DiLorenzo or his agent were sufficient evidence of a real estate brokerage agreement between Bishop DiLorenzo and

7

Vaughan to remove the bar of the statute of frauds.  We hold that they were.

> The statute [of frauds] is procedural or remedial in nature, and is concerned, not with the validity of the contract, but with its enforceability.
>
> The object of the statute of frauds is to prevent frauds and perjuries, and not to perpetrate them, so that the statute is not enforced when to do so would cause a fraud and a wrong to be perpetrated.

T . . . v. T . . ., 216 Va. 867, 871, 224 S.E.2d 148, 151 (1976) (citations omitted).

In Drake v. Livesay, 231 Va. 117, 341 S.E.2d 186 (1986), we reversed the trial court's decision to sustain the defendant's demurrer, holding that a letter sent by the seller of real property, in which he apologized for having sold the property to a higher bidder, "was a memorandum of an oral contract . . . sufficient to support a breach-of-contract action between" the seller and the spurned buyer.  Id. at 121, 341 S.E.2d at 188.  In Drake, we held,

> the statute [of frauds] does not require that contracts within its purview be written.  It merely interposes a bar to the enforcement of certain oral contracts, which bar may be removed by proof of a sufficient written memorandum of the transaction.  When the bar is removed, it is the oral contract which is subject to enforcement, not the memorandum.  Because the memorandum serves only to remove a bar to the enforcement of the oral contract, the validity of the oral contract may be established by other evidence.

Id. at 120, 341 S.E.2d at 188 (emphasis added).

8

The present case contemplates the application of the statute of frauds not to an oral contract for the sale of real property, but to an oral real estate brokerage agreement. "A real estate listing agreement is defined as a contract 'between an owner of real property and a real estate agent, whereby the agent agrees to secure a buyer or tenant for specific property at a certain price and terms in return for a fee or commission.'" Murphy v. Nolte & Co., Inc., 226 Va. 76, 81, 307 S.E.2d 242, 245 (1983) (quoting Black's Law Dictionary 840 (5th ed. 1979)). "The [statute of frauds] does not require that the whole contract be in writing to be enforced when . . . the memorandum relied on contains the essential terms of the agreement." Id. at 82, 307 S.E.2d at 245 (citing Reynolds v. Dixon, 187 Va. 101, 106, 46 S.E.2d 6, 8 (1948)).

In Murphy, a real estate broker sought his proportionate share of a sales commission based on an oral listing agreement. Id. at 78, 307 S.E.2d at 243. The only written evidence of the oral agreement introduced at trial was the sales contract, negotiated directly between the sellers and purchasers, for the subject property. Id. at 79-80, 307 S.E.2d at 244. After reviewing the contract, we determined that "[m]anifestly" there was "sufficient written evidence, signed by the sellers, authorizing [the broker] to act as their agent to secure a

9

buyer for the property at a specific price in return for a commission." Id. at 81, 307 S.E.2d at 245.

Murphy noted that the written sales agreement before the trial court "identifie[d] the parties to that agreement, . . . acknowledge[d] the participation of [the broker], identifie[d] the property, state[d] a firm price as well as the terms of sale, and provide[d] that a commission [would] be paid to the brokers." Id. at 81-82, 307 S.E.2d at 245. Accordingly, the trial court affirmed the jury's award of a verdict in favor of the broker for his sales commission. Id. at 78, 83, 307 S.E.2d at 243, 246.

Here, as in Murphy, there was a contract for the sale of real property – the Solodar Agreement – that "contains the essential terms of the [brokerage] agreement." Id. at 82, 307 S.E.2d at 245. This writing alone is sufficient written evidence of an oral agreement between Vaughan and Bishop DiLorenzo to remove the bar of the statute of frauds. The Solodar Agreement identified Bishop DiLorenzo and Solodar as the parties to the sale, acknowledged Beitz as Bishop DiLorenzo's representative in the transaction, identified the Chancery Buildings as the properties to be sold, stated an approximate purchase price, identified the terms of sale, and provided that a commission would be paid to Vaughan.

10

In his demurrer to Vaughan's amended complaint, Bishop DiLorenzo contends that Vaughan failed to "set[] out the necessary terms to include parties, duration and compensation." Compensation is not required by the plain language of Code § 11-2, the last paragraph of which expressly eliminates consideration as an element of the agreement required in the writing. And as our analysis in Murphy articulates, no written durational language is required in order to remove the bar of the statute of frauds from a real estate brokerage agreement. It bears repeating that the "statute [of frauds] is concerned, not with the validity of the contract, but with its enforceability." T . . . v. T . . ., 216 Va. at 871, 224 S.E.2d at 151.

The present case is distinguishable from Murphy because here the Solodar Agreement was not consummated. However, the terminated Solodar Agreement is not the contract Vaughan seeks to enforce.

> When the bar [of the statute of frauds] is removed, it is the oral contract which is subject to enforcement, not the memorandum. Because the memorandum serves only to remove a bar to the enforcement of the oral contract, the validity of the oral contract may be established by other evidence.

Drake, 231 Va. at 120, 341 S.E.2d at 188. Just as the sales contract in Murphy contained "references . . . sufficient to remove the oral [real estate

brokerage] agreement from the operation of the statute of frauds," 226 Va. at 82, 307 S.E.2d at 245, we hold that the Solodar Agreement, by itself, is sufficient to overcome a plea of the statute of frauds in this case.

In addition to the Solodar Agreement, Vaughan introduced additional writings that bolster its argument that the statute of frauds should not operate to bar its claim. The VCU Letter was signed by Shreve, identified in Vaughan's amended complaint as "Vicar General of the defendant." By authorizing that request, Shreve ratified VCU's reference to Bishop DiLorenzo as Vaughan's "client." Additionally, while not sufficient standing alone, the March 2, 2007 and August 6, 2007 letters from Bishop DiLorenzo to Beitz further support Vaughan's claim of a contract between the parties. We have long held that multiple writings may be used to defeat a plea of the statute of frauds. See Jordan & Davis v. Mahoney, 109 Va. 133, 136, 63 S.E. 467, 468 (1909). Taken together, in this case "[m]anifestly" there was "some memorandum . . . in writing and signed by the party to be charged or his agent," Code § 11-2, "sufficient to remove the oral agreement from the operation of the statute of frauds." Murphy, 226 Va. at 81, 82, 307 S.E.2d at 245.

As we held in Murphy, "while the whole services agreement is not memorialized by the writing, nevertheless, the references in the sales contract are sufficient to remove the oral agreement from the operation of the statute of frauds." Id. at 82, 307 S.E.2d at 245. The same principles of law hold true here. Of course, Vaughan will bear the burden of proof concerning the oral agreement at trial.

### III. CONCLUSION

We hold that the trial court erred when it sustained Bishop DiLorenzo's demurrer. Accordingly, we will reverse the judgment of the trial court and remand this case for a trial on the merits.

Reversed and remanded.