# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Larry R. Favor
and Karrie L. Favor

    v.

Dennis A. Quinn, Sr.,
and Sandra M. Quinn

    v.

James River Real Estate,
White, et al.

July 23, 2014

Case No. CL13-1422

BY JUDGE MARJORIE T. ARRINGTON

This matter is before the Court upon the Whites' and James River Real Estate's (collectively "James River") demurrers and pleas in bar to all counts of the Quinns's third-party complaint. After hearing arguments of counsel and reviewing the transcript and briefs, the Court finds for Defendants. The demurrers are overruled, except as to Counts 4 and 9 for breach of fiduciary duties. However, the pleas in bar to all remaining counts are sustained.

## Background

The Quinns allege they contracted with James River to help them purchase a house that was not subject to a homeowners' association or similar restrictions. Third-party complaint at ¶ 29. James River drafted the Purchase Agreement outlining the terms of the sale of the Favor's house to the Quinns. *See* Purchase Agreement at Plaintiff's Exhibit A; Third-party complaint at ¶ 50. All parties endorsed the Purchase Agreement.

That same day, September 29, 2012, the Quinns signed the Disclosure Agreement that clearly states the buyer has a duty to investigate whether the property is subject to restrictions and that the real estate agent, broker, and firm will not be liable for any failure to investigate. The Purchase Agreement was silent as to whether the property was subject to a homeowners' association and it did not list covenants and restrictions as a contingency for backing out of the contract. Purchase Agreement at ¶ 14(B) (1)-(2). The property was subject to covenants and restrictions.

The Quinns backed out of the Purchase Agreement. The Favors sued the Quinns for costs associated with selling the property to somebody else. (*See* Complaint.) James River refused to return the $12,000 earnest money deposit to the Quinns. The Quinns filed a third-party complaint against James River alleging eleven counts: breach of contract (counts 1, 6); breach of implied contract (counts 2, 7); negligence (counts 3, 8); breach of fiduciary duties (counts 4, 9); indemnity (counts 5, 10); and respondeat superior (count 11).

James River filed pleas in bar and demurrers to all counts. The Court heard arguments of counsel on May 21, 2014. A transcript from the hearing was subsequently filed.

## Analysis

### I. Demurrers

#### A. Standard

"The purpose of a demurrer is to determine whether a motion for judgment states a cause of action upon which the requested relief may be granted." *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 712 (2006) (citing *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 218, 226 (2001)). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554 (2003). Accordingly, we accept as true all properly pleaded facts and all inferences fairly drawn from those facts. *Id.* In addition, a court may examine not only the substantive allegations of the pleading being attacked, but also any accompanying exhibit mentioned in the pleading. *Flippo v. F&L Land Co.*, 241 Va. 15, 17 (1991). No grounds other than those stated specifically in the demurrer shall be considered by the court. Va. Code § 8.01-273.

## B. *Breach of Express and Implied Contract (Counts 1, 2, 6, 7)*

James River argues the claims for breach of express and implied contract must fail because the allegations are contradicted by the terms of the Disclosure Agreement and because the complaint fails to allege facts showing James River proximately caused any injury. The Disclosure Agreement is a general Real Estate Information Network, Inc., form that notifies potential buyers and sellers that a property may be subject to covenants and restrictions. The form also absolves the real estate firm, agent, and broker of liability for damages arising from buyer's failure to investigate the disclosures.

The Quinns allege facts sufficient to show they entered into a contract, specifically a broker agreement, with James River. The broker agreement is separate and apart from the Purchase Agreement and the Disclosure Agreement and is even referred to in the Purchase Agreement at ¶¶ 14 and 16. The Quinns allege facts sufficient to show James River breached the terms of the broker agreement and that they suffered damages as a result. They also allege facts sufficient to show the broker agreement may have had terms pertaining to finding a house not subject to covenants because the Quinns allege they backed out of prior contracts upon learning about restrictions. Third-party complaint at ¶¶ 33, 38. Thus, the Court overrules the demurrers to breach of express and implied contract claims.

## C. *Negligence (Counts 3, 8)*

James River demurred to the negligence claims on grounds that the Quinns were contributorily negligent and that the Quinns fail to allege facts sufficient to show James River was the proximate cause of any damages suffered.

"Contributory negligence is an affirmative defense that must be proved according to an objective standard whether the plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances. The defendant has the burden to prove contributory negligence by the greater weight of the evidence." *RGR, L.L.C. v. Settle*, 2014 Va. LEXIS 96, *11 (2014). Negligence only has to be pleaded generally and is sufficient if plaintiff alleges defendant's negligence proximately caused the injuries and the amount of damages caused. Va. Sup. Ct. R. 3:18(b). The complaint alleges James River negligently drafted the Purchase Agreement an0that, in doing so, James River directly caused the damages sought. Accordingly, the demurrers are overruled as to the negligence counts.

## D. *Respondeat Superior (Count 11)*

Respondeat superior is not a cause of action but a theory of liability. *Shaver v. HPB Corp.*, 94 Va. Cir. 382. "Respondeat superior is not an independent conflicting tort, civil claim, or remedy. Rather it is a legal precept that presupposes the existence of an underlying claim and assesses

the liability not because of the act giving rise to the claim but because of a certain status. Thus, one cannot bring a claim of 'respondeat superior,' instead one simply relies on this theory as a vehicle for imposing on the principal liability for the underlying wrongful acts of the agent. *Id.* at 384 (internal citation omitted).

Notwithstanding, James River did not demur to this count on grounds that it is not a valid claim for relief. James River demurred on grounds that because all other claims fail as a matter of law, this one must, too. The court can only consider grounds specifically stated in the demurrer. Va. Code § 8.01-273. Because not all of the claims fail on demurrer, the Court must overrule the demurrer as to Count 11 for respondeat superior.

E. *Indemnity (Counts 5, 10)*

> There are two basic types of indemnity: express indemnity and implied indemnity. A claim based upon express indemnification arises out of a written agreement between the parties; implied indemnification arises from the relationships between the parties. Generally, the principle of implied indemnity arises from equitable considerations. A claim for implied indemnity arises when the indemnitee, the person seeking to assert implied indemnification, has been required to pay damages caused by an indemnitor, a third party. In the implied indemnification context, the indemnitee is liable to the injured party because of some positive duty created by statute or common law, however, the actual cause of the injury to the third party was the act of the indemnitor.

*Board of Directors of Birdneck Villas Condominimum Assoc. v. Birdneck Villas, L.L.C.*, 73 Va. Cir. 175, 180 (Virginia Beach 2007) (*quoting Winchester Homes, Inc. v. Hoover Universal, Inc.*, 39 Va. Cir. 107, 114 (Fairfax 1996)).

Additionally, Virginia courts and the Fourth Circuit have upheld claims for implied indemnity only when unique factors or a special relationship between the parties gives rise to such a right. *Id.; see also Hanover Ins. Co. v. Corrpro Cos.*, 312 F. Supp. 2d 816, 821 (E.D. Va. 2004).

As in *Birdneck Villas*, there is no written agreement between the Quinns and James River, so any right to indemnity must be implied and must arise out of a special relationship between the parties. *Birdneck Villas*, 73 Va. Cir. at 180 (sustaining demurrer to indemnity claims, finding subcontractor relationship to general contractor is not unique enough to give rise to implied indemnity where no written contract for it). Here, the Court does not need to ponder whether the real estate firm/broker/agent relationship with a client is special enough to give rise to implied indemnity claims

because James River's demurrer to the indemnity count only alleges the claim fails because all the other claims must fail as a matter of law. Because the Court cannot consider grounds not alleged in the demurrer and because not all of the claims fail, the demurrer as to indemnity counts is overruled.

## F. *Breach of Fiduciary Duty (Counts 4, 9)*

James River demurs to the fiduciary duty counts on grounds that the claims are barred by the economic loss doctrine, that the counts allege duties that do not exist under Virginia law, that the Quinns pleaded facts supporting contributory negligence, and that they failed to plead facts sufficient to show proximate cause.

The Supreme Court detailed economic loss doctrine analysis as follows:

> In determining whether the economic loss doctrine precludes an action in tort, we have observed:

> The law of torts is well equipped to offer redress for losses suffered by reason of a breach of some duty imposed by law to protect the broad interests of social policy. Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

> More recently we observed, the law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society. Losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts.

> Based on the foregoing, the question whether the economic loss doctrine applies requires a court first to determine whether a cause of action sounds in contract or tort, ultimately by ascertaining the source of the duty violated.

> Notwithstanding the limitations on certain tort actions created by the economic loss doctrine, it is well-established that a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for

breach of a duty arising in tort, thus permitting a plaintiff to recover both for the loss suffered as a result of the breach and traditional tort damages, including, where appropriate, punitive damages.

*Abi-Najm v. Concord Condominium, L.L.C.*, 280 Va. 350, 360-61 (2010) (internal quotations and citations omitted).

In this case, the relationship between the parties sounds in contract law because it arises from James River's agreement with the Quinns to help them buy a house. Any duties owed to the Quinns necessarily originate from the broker contract.

The Quinns argue James River has special duties outlined in Va. Code § 54.1-2132, which applies to real estate licensees hired by a home buyer. However, the Quinns's reliance on that code section is misplaced. In *Monica v. Hottel*, 64 Va. Cir. 439, 2004 Va. Cir. LEXIS 156 (Loudoun County 2004), the court found that statute does not give rise to an independent cause of action. Because the duties arise out of the contractual relationship, the economic loss doctrine bars the claim for breach of fiduciary duties. Accordingly, the demurrer to these counts is sustained.

## II. *Pleas in Bar*

### A. *Breach of Express and Implied Contract (Counts 1, 2, 6, 7)*

The first issue is whether the writings signed by the parties are sufficient evidence of a real estate brokerage agreement between the Quinns and James River. The Court finds they are.

James River argues the breach of contract claims (Counts 1, 6) must fail because the written agreement between the parties does not require James River to find the Quinns a house that is not subject to homeowners' association restrictions. Further, they argue any such provision would have been oral and, according to James River, are barred by the Statute of Frauds.

The Statute of Frauds requires contracts for services pertaining to the sale of land to be in writing but does not require consideration to be in writing and permits the consideration to be proved by other evidence. Va. Code § 11-2. Additionally:

> the statute of frauds does not require that contracts within its purview be written. It merely interposes a bar to the enforcement of certain oral contracts, which bar may be removed by proof of a sufficient written memorandum of the transaction. When the bar is removed, it is the *oral contract which is subject to enforcement,* not the memorandum. Because the memorandum serves only to remove a bar to

the enforcement of the oral contract, the validity of the oral contract may be established by other evidence.

C. *Porter Vaughan, Inc., Realtors v. DiLorenzo*, 279 Va. 449 (2010) (citing *Drake v. Livesay*, 231 Va. 117, 121 (1986)). "The statute of frauds does not require that the whole contract be in writing to be enforced when . . . the memorandum relied on contains the essential terms of the agreement." *Id.* at 457 (internal citation omitted).

In *DiLorenzo*, the Court held a purchase agreement between buyer and seller was sufficient evidence to support the existence of an oral agreement between seller and the brokerage agent and to remove the bar of the statute of frauds where the purchase agreement "identified the parties to that agreement . . . acknowledged the participation of the broker, identified the property, stated a firm price as well as the terms of sale, and provided that a commission would be paid to the brokers." *DiLorenzo*, 279 Va. 449 at 458 (relying on *Murphy v. Nolte & Co.*, 226 Va. 76 (1983)).

> When the bar of the statute of frauds is removed, it is the oral contract which is subject to enforcement, not the memorandum. Because the memorandum serves only to remove a bar to the enforcement of the oral contract, the validity of the oral contract may be established by other evidence.

*Id.* The *DiLorenzo* court was careful to distinguish the difference between the purchase agreement for the property and the listing agreement between the seller and brokerage firm. It noted the purchase agreement was not consummated, but nonetheless held the purchase agreement was sufficient to overcome the statute of frauds because it was not the purchase agreement the plaintiff sought to enforce, it was the oral brokerage agreement.

In this case, the Court must also distinguish between the purchase agreement and the oral brokerage agreement between the Quinns and James River Real Estate. Here, the Purchase Agreement identifies the buyer and seller, acknowledges participation of brokers on both sides of the transaction (at ¶ 15(A)(2)), identifies the property, states a firm price and terms of the sale, and states a commission will be paid to the brokers (at ¶ 16). It is sufficient to overcome the bar of the statute of frauds as to Counts 1, 2, 6, and 7 for breach of contract and breach of implied contract. Therefore, the pleas in bar to those counts are overruled.

B. *Plea in Bar; All Counts*

At this point, the remaining counts are for breach of express and implied contract, negligence, indemnity, and respondeat superior. James River's plea in bar applies to all counts and argues the Quinns's claims are barred by the Disclosure Agreement.

The Disclosure Agreement puts the buyer on notice that any potential property may be subject to restrictions, covenants, and homeowners' associations. It makes it the buyer's duty to investigate whether a property is subject to restrictions, and it frees the real estate agent, broker, and firm from liability associated with the buyers' failure to investigate before endorsing any contracts. The Quinns endorsed the Disclosure Agreement on September 29, 2012, the same day they executed the Purchase Agreement. The Purchase Agreement incorporates the Disclosure Agreement at ¶ 15:

> *Confirmations and Disclosures*: Buyer and Seller acknowledge by their initials below receipt of their REIN Consumer Disclosure Information Form prior to entering into this Agreement as well as the following disclosures. Neither Seller, Real Estate Information Network, Inc. ("REIN"), Listing Firm, Selling Firm, nor their employees or agents will be held responsible for Buyer's failure to have investigated and evaluated the impact of any of the disclosures made in this Agreement on the Property, including those additional disclosures on the Consumer Disclosure Information Form.

Purchase Agreement at ¶ 15. The Disclosure Agreement is unambiguous. It clearly informs the buyer of his duty to investigate whether a property is subject to covenants and restrictions and it clearly removes the real estate firm's liability for buyers' failure to investigate the disclosures. The Disclosure Agreement is incorporated into the Purchase Agreement.

The Quinns initialed every page of the Purchase Agreement, endorsed it on the last page, and endorsed the Disclosure Agreement. The Quinns did not have to endorse the Purchase Agreement as it was written. They could have added contingencies for covenants. Yet, they signed it as it was written. Thus, the Court finds the Purchase Agreement and the Disclosure Agreement are a bar to claims against James River for counts pertaining to discovery of covenants and restrictions. Because all remaining counts arise from the subsequent discovery of covenants and restrictions, the pleas in bar are sustained as to all remaining counts.

### Conclusion

In sum, the demurrers to Counts 4 and 9 for breach of fiduciary duties are sustained and the pleas in bar to all remaining counts are sustained.